## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| SHEILA McNEIL,<br>    Plaintiff, | )<br>) | |
| | ) | **Civil Action No.** |
| v. | ) | 2:26-cv-00411 |
| | ) | |
| KAY IVEY, in her official capacity as | ) | Jury Trial Demanded |
| Governor of the State of Alabama; | ) | |
| STEVE MARSHALL, in his official | ) | |
| capacity as Attorney General of the | ) | |
| State of Alabama, | ) | |
|    Defendants. | ) | |

## AMENDED COMPLAINT

**COMES NOW,** Plaintiff Sheila McNeil, a duly qualified candidate for the Alabama Public Service Commission ("PSC"), Place 2, and brings this action pursuant to 42 U.S.C. § 1983, 52 U.S.C. § 10301 (Voting Rights Act of 1965, as amended), and 28 U.S.C. §§ 2201-2202 against Defendants in their official capacities, seeking declaratory and injunctive relief including a temporary restraining order and preliminary injunction to prevent the unconstitutional implementation of Alabama House Bill 475, as enacted on April 3, 2026 ("HB 475" or "the Act"), which fundamentally and unconstitutionally restructures the Alabama Public Service Commission in the midst of an ongoing election cycle in which Plaintiff is an active candidate.

## I.  NATURE OF THE ACTION

1.      This case arises from the Alabama Legislature's enactment of HB 475, signed into law on April 3, 2026, more than two months after Plaintiff had already qualified as a candidate, paid her filing fee, publicly announced her candidacy, registered her Principal Campaign Committee, and begun active statewide campaigning. HB 475 radically restructures the Alabama Public Service Commission, a body that regulates electric, gas, telephone, and other public utilities serving millions of Alabamians.

2.      House Bill 475 was introduced on February 19, 2026 in a form that addressed utility rate proceedings, solar and wind facility oversight, and prohibited utility lobbying costs from being passed to ratepayers. As passed by the Alabama House of Representatives on March 17, 2026 by a vote of 104 yeas, 0 nays, and 1 abstention, HB 475 did not alter the composition or structure of the PSC. The Alabama Senate, however, substantially amended HB 475 to incorporate provisions from Senate Bill 360 (SB 360), which had been separately introduced on March 10, 2026 and which Plaintiff had publicly and formally opposed. The enacted version of HB 475 is a fundamentally different piece of legislation than what candidates and voters understood to be in play when the 2026 election cycle commenced.

3.      The enacted HB 475 alters the office of PSC Commissioner in the following principal respects:

a. expanding the commission from three at-large commissioners to seven commissioners, each elected from a congressional district;

b. authorizing the Governor to appoint four interim commissioners as early as June 2026, before the November 2026 general election;

c. creating a new, Governor-appointed Secretary of Energy to serve as administrative director of the PSC, controlling its agenda and personnel;

d. imposing substantive restrictions on how electric utility rates are calculated; and

e. requiring triennial formal rate cases and public processes for proposed solar and wind power facilities.

4. HB 475 violates the United States Constitution in multiple, independent respects:

a. it disrupts an ongoing election by changing the fundamental character of the office being contested mid-campaign, in violation of the Equal Protection Clause of the 14th Amendment and the Purcell principle;

b. it dilutes minority voting power in violation of the Equal Protection Clause and Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, by dismantling the at-large system through which minority voters statewide could collectively influence all PSC commissioner elections;

c. it deprives Plaintiff of constitutionally protected liberty and property interests without substantive or procedural due process; and

d. it vests core administrative authority over an independent regulatory commission in a gubernatorial appointee, undermining the democratic accountability of the office.

5.     The harm Plaintiff faces is immediate and irreparable. Under HB 475, the Governor is required to receive candidate lists from legislative leaders by June 1, 2026, and to appoint four interim PSC commissioners no later than July 15, 2026. Once those appointments are made and the commission is structurally reconstituted, the electoral disruption cannot be undone by any subsequent court order. Plaintiff respectfully requests that this Court act on an expedited basis to preserve the status quo.

## II.  JURISDICTION AND VENUE

6.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4), because this action arises under the United States Constitution and 42 U.S.C. § 1983. This Court also has jurisdiction over Plaintiff's claim under the Voting Rights Act pursuant to 52 U.S.C. § 10301 and 28 U.S.C. § 1331.

7.     This Court has authority to grant declaratory relief under 28 U.S.C. §§ 2201-2202 and to grant injunctive relief under Rule 65 of the Federal Rules of Civil Procedure.

8.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants perform their official duties within this District, the Alabama Public Service Commission is headquartered in Montgomery, Alabama (within this District), and the acts and omissions giving rise to Plaintiff's claims occurred and will continue to occur in this District.

### III.  PARTIES

9.     Plaintiff Sheila McNeil is a citizen and qualified elector of the State of Alabama. She is a candidate for Alabama Public Service Commission, Place 2, in the 2026 general election. She qualified during the Alabama Democratic Party's candidate qualifying period of January 5-23, 2026, paid her qualifying fee on January 20, 2026, publicly announced her candidacy at a press conference at the Alabama Democratic Party Office in Montgomery on January 22, 2026, and received confirmation of the registration of her Principal Campaign Committee on January 23, 2026. Since qualifying, Plaintiff has waged an active statewide campaign, at no small cost, traveling to and campaigning in at least fourteen Alabama counties between February 3 and April 30, 2026, and engaging in sustained public outreach, fundraising, and advocacy on behalf of Alabama utility ratepayers.

All of these activities were undertaken in reliance on the structure, authority, and governing rules of the PSC office as they existed at the time of Plaintiff's qualifying.

10.    Defendant Kay Ivey is the Governor of the State of Alabama and is sued in her official capacity. Under HB 475, the Governor is charged with receiving candidate lists from legislative leaders by June 1, 2026, and appointing four interim PSC commissioners no later than July 15, 2026, with two serving two-year terms and two serving four-year terms. The Governor is also charged with appointing the Secretary of Energy beginning January 19, 2027. Governor Ivey is charged with implementing and enforcing HB 475.

11.    Defendant Steve Marshall is the Attorney General of the State of Alabama and is sued in his official capacity. The Attorney General is the chief law enforcement officer of the State and is charged with defending the constitutionality of Alabama statutes and with enforcing state law. Attorney General Marshall is a necessary party to this action seeking to enjoin the enforcement of a state statute.

## IV.  FACTUAL BACKGROUND

### A.  The Alabama Public Service Commission: Over One Hundred Years of At-Large Election

12.    For more than one hundred years, the Alabama Public Service Commission has consisted of three members, a President and two Associate Commissioners,

elected at-large by the qualified electors of the entire State. Ala. Code § 37-1-1 (prior to amendment); § 37-1-3. Commissioners serve four-year staggered terms. The President is elected in one cycle (most recently 2024); the two Associates are elected in another (most recently 2022 and thereafter 2026). All current PSC members were initially appointed to their positions by the Governor before standing for election. Ala. Code § 37-1-3(c)(d).

13.   The PSC was established in 1915 and has operated as an elected commission ever since. A critical feature of its historical mandate was the formal public rate case, an evidentiary proceeding with public notice, subpoena authority, and genuine opportunity for ratepayer participation through which the PSC examined utility pricing. The most recent such formal, public rate case was held between June 29, 1981 and October 16, 1981, at which time the PSC denied Alabama Power's requested rate increase. In December 1982, the Rate RSE (Rate Stabilization and Equalization) mechanism was established to replace rate cases, allowing Alabama Power to receive guaranteed, formulaic profit adjustments without the public involvement and adversarial scrutiny that formal rate cases required. In 2013, when Republicans achieved a trifecta at the PSC, holding all three PSC positions simultaneously, for the first time, the commission created an additional rate-setting formula Weighted Retail Return on Common Equity that has since doubled Alabama Power's profits from approximately $712 million in 2013 to approximately $1.5

billion in 2025. This decades-long displacement of public rate oversight forms the essential backdrop against which the public groundswell of support for PSC reform and the legislative events of 2026 must be understood.

14.   The PSC exercises broad quasi-legislative and quasi-adjudicative authority over public utilities operating in Alabama, including authority to set rates and service regulations for investor-owned electric, gas, and telecommunications utilities serving millions of Alabama ratepayers. The commission also regulates transportation and other public services subject to its jurisdiction.

15.   Because the PSC is a statewide elected office, candidates are subject to Alabama's general election statutes and the Alabama Democratic Party's qualifying requirements, including specified filing periods, qualifying fees, and campaign finance obligations. The qualifying period for the 2026 election cycle was January 5-23, 2026.

16.   Existing Alabama law at the time Plaintiff qualified imposed meaningful conflict-of-interest protections on PSC commissioners prohibiting them from holding stock in, being employed by, or being pecuniarily interested in any utility regulated by the commission. Ala. Code §§ 37-1-5, 37-1-6, 37-1-7. Commissioners could be impeached and removed for accepting gifts or employment from a regulated utility. Ala. Code § 37-1-7.

**B. The 2026 Legislative Session: Three Competing Reform Bills**

17.    During the 2026 Regular Session, three separate bills were introduced addressing PSC reform. Each proposed a fundamentally different structural approach, and together they illustrate the legislature's awareness that changing the PSC's structure during an active election cycle would have significant consequences for candidates and voters. The political urgency behind these bills was itself data-driven: polling conducted among Republican voters in Alabama in January 2026 showed that affordability was the number one issue, with approximately 80% of respondents identifying cost-of-living as their top concern a finding that underscores why PSC reform, and particularly the issue of utility rates, had become a focal point of the 2026 legislative session and election cycle.

18.    Senate Bill 268 (SB 268) addressed PSC reform in a form that Plaintiff formally opposed on February 11, 2026, when she sent a mass email to Alabama legislators urging opposition to both SB 268 and HB 392. The circumstances surrounding SB 268 and HB 392 are themselves probative of the utility industry's active involvement in the PSC restructuring effort. On January 27, 2026, Alabama Power's Government Affairs Director R.B. Walker, a registered lobbyist, placed a phone call to Energy Alabama's Policy Manager and registered lobbyist, John Dodd, in which Walker attempted to persuade Energy Alabama to support SB 268 and HB 392 legislation that would have converted the PSC from elected to appointed, a

structural change widely understood to benefit Alabama Power. That phone call was recorded and leaked to the public in mid-February 2026. On February 15, 2026, the call became public, causing both SB 268 and HB 392 to collapse politically and R.B. Walker to resign his position. SB 268 did not advance.

19.     House Bill 392 (HB 392), introduced February 5, 2026 by Representatives Brown, Faulkner, DuBose, Estes, Ross, Shaw, Smith, Mooney, and Carns, and referred to the House Transportation, Utilities and Infrastructure Committee, proposed to convert the PSC from an elected to an appointed body. Under HB 392, following the terms of commissioners serving immediately after the November 2026 General Election, the three PSC members would be appointed by the Governor, Speaker of the House of Representatives, and President Pro Tempore of the Senate, respectively, subject to Senate confirmation. HB 392 also proposed to: extend conflict-of-interest prohibitions to nonutility entities participating in commission proceedings; require annual public informational meetings with utility representatives; and prohibit lobbying expenses from being charged to ratepayers. HB 392 was placed on the House calendar but was never moved to a floor vote.

20.     Senate Bill 360 (SB 360), titled the "Power to the People Act," was introduced March 10, 2026 by Senator Chambliss and thirty-four co-sponsors from both parties. SB 360 proposed:

a. expanding the PSC from three at-large commissioners to seven commissioners each representing and elected from a congressional district, with six-year terms phased in through multiple election cycles;

b. the appointment by the Governor of four interim commissioners no later than July 15, 2026, selected from candidate lists submitted by the Lieutenant Governor, Speaker, and President Pro Tempore;

c. creating the position of Secretary of Energy as a Governor's cabinet member with authority to direct PSC activities, set meeting agendas, and control personnel and administrative functions;

d. prohibiting an increase in electric retail base rates through June 1, 2029, and thereafter prohibiting utilities from factoring lobbying, grant-giving, and certain advertising costs into rates; and

e. requiring at least one annual public meeting with utility representatives.

Plaintiff publicly and formally opposed SB 360 in press releases issued on March 12, 2026 and March 16, 2026 to statewide media.

21.  House Bill 475 (HB 475) was introduced on February 19, 2026 by Representatives Butler, Harrison, Myrex, Gidley, Mooney, Whorton, Stringer, DuBose, and Yarbrough, and referred to the House Transportation, Utilities and Infrastructure Committee. As introduced and as passed by the House, HB 475

addressed rate cases, solar and wind facility oversight, and utility cost prohibitions but did not alter the composition, structure, or appointment of PSC commissioners.

**C. The Legislative History of HB 475 and the Senate's Substantial Amendment**

22.   HB 475 was read for the first time in the House on February 19, 2026, and referred to the Transportation, Utilities and Infrastructure Committee. It was placed on the calendar on March 11, 2026. The House passed HB 475 on March 17, 2026 by a vote of 104 yeas, 0 nays, and 1 abstention with no amendments.

23.   As passed by the House, HB 475 consisted of three operative sections:

   a.  a mandate that the PSC convene a formal rate case with each investor-owned utility at least every three years, conducted as an evidentiary hearing with subpoena authority, subject to public notice, with failure to comply constituting grounds for impeachment;

   b.  a requirement that any person seeking to establish a large-scale solar power facility or wind power facility in Alabama submit a proposal to the PSC, triggering a public notice and comment period of at least 60 days and a public hearing; and

   c.  a prohibition on regulated electric utilities from including lobbying costs, political influence expenditures, and certain other costs in rate calculations,

- 12 -

together with a cap on allowable return on equity at the regional average of investor-owned utilities in neighboring states.

24.     After HB 475 was transmitted to the Alabama Senate, the Senate substantially amended the bill to incorporate the structural and administrative provisions of SB 360, which had not separately advanced. The Senate-amended version enacted as HB 475 on April 3, 2026, is a fundamentally different piece of legislation. It adds the commission expansion to seven district-based seats, the phased appointment and election scheme, the Secretary of Energy position, and the rate freeze provisions, all of which are drawn directly from SB 360. The enacted HB 475 bears little resemblance to the bill that candidates and voters knew when the 2026 election cycle began.

25.     The timing and manner of the Senate's overhaul of HB 475 is itself significant. The Senate overhauled the bill on April 1, 2026, and the Governor signed the Act into law on April 3, 2026. Of additional constitutional significance is the fact that absentee voting in Alabama had already begun on March 25, 2026, eight days before the Governor signed HB 475 into law meaning that Alabama voters were actively casting ballots for PSC candidates under one legal framework while the Legislature was in the process of fundamentally restructuring the office those candidates sought. The public popularity of the original HB 475, which had passed the House 104-0, appears to have been used strategically: the Senate took a massively popular bill and,

at the last minute, converted it into a structural overhaul that the original sponsors themselves opposed, with eight of the nine original House sponsors voting against the Senate-amended version when it returned to the House (which passed it 72-26). The enacted version gave an appointed Secretary of Energy near-complete administrative control over the PSC, the outcome that had been sought, and failed, through SB 268, HB 392, and SB 360.

26.    Plaintiff formally and publicly opposed HB 475. On April 1, 2026, Plaintiff sent a mass email to Alabama legislators urging opposition to HB 475. On April 3, 2026, the same day HB 475 was enacted, Plaintiff issued a press release to statewide media, titled "McNeil Campaign: HB 475 Dismantles Oversight and Hands Utilities a Blank Check," opposing the bill. Plaintiff's opposition to HB 475 is consistent with her public record of opposing each successive iteration of PSC reform legislation throughout the 2026 session.

**D.  Key Provisions of the Enacted HB 475**

27.    As enacted on April 3, 2026, HB 475 contains the following principal provisions material to this action:

a.  Commission Expansion (7 Districts): The PSC is expanded from three at-large commissioners to seven commissioners, one representing and elected from each of Alabama's seven congressional districts, as defined by Section 17-14-

70 of the Alabama Code or any court-ordered map in lieu thereof. Ala. Code § 37-1-3(b)(1) (as amended). The Act states that "[b]eginning after the effective date of this act as further provided in this subsection, the membership of the commission shall be expanded so that each commissioner shall represent and serve, and be elected by the qualified voters of, a geographical district that shall be identical to a corresponding congressional district, as fixed and established for the 2024 congressional elections." The effective date of the Act was June 1, 2026. By this language, each commissioner elected after June 1, 2026 is to represent a geographical district rather than representing the entire state.

b.  Immediate Gubernatorial Appointments (June–July 2026): No later than July 15, 2026, the Governor shall appoint four commissioners to serve initial terms: two for two-year terms and two for four-year terms. The Governor must select each appointee from a list of three names jointly submitted by the Lieutenant Governor, the Speaker of the House, and the President Pro Tempore of the Senate. This list must be delivered to the Governor no later than June 1, 2026. Ala. Code § 37-1-3(b)(2) (as amended).

c.  Phased District Elections: District-based PSC elections are phased in across multiple cycles. Two commissioners are to be elected in November 2026; three more replace the president and two-year appointees in November 2028

(including one from the Seventh Congressional District); and the final two replace the four-year appointees in November 2030 (including one from the Second Congressional District). Ala. Code § 37-1-3(b)(3) (as amended).

d.  Six-Year Terms for Newly Elected Commissioners: Commissioners elected after June 1, 2026 serve six-year terms, beginning on the first Monday after the second Tuesday in January following the general election. Ala. Code § 37-1-3(c) (as amended).

e.  Commissioners Elect Their Own President: Beginning with the November 2028 terms, commissioners elect a president and vice-president from among themselves at the start of each term eliminating the separately-elected commission presidency. Ala. Code § 37-1-3(e) (as amended).

f.  Secretary of Energy (effective January 19, 2027): The position of Secretary of Energy is created as a member of the Governor's cabinet, appointed by and serving at the pleasure of the Governor. The Secretary sets the agendas for all commission meetings (subject to override by five of seven commissioners), directs commission activities, and controls personnel and administrative functions. The Secretary must have experience in utility regulation or energy policy. Ala. Code § 37-1-12 (as amended).

g. Rate Freeze: The retail base rates in place on October 1, 2026 for each regulated electric utility may not be increased before June 1, 2029. Ala. Code § 37-1-81.1(a) (as added).

h. Prohibited Costs in Rate Calculations (effective June 1, 2029): On and after June 1, 2029, electric utilities may not factor into rate determinations: (1) costs of lobbying the Legislature or any political office; (2) funding or grants to other persons or organizations; and (3) advertising costs other than public safety advertising approved by the commission. Utilities must affirm under oath that prohibited costs are not included when filing any new or changed rate schedule. Ala. Code § 37-1-81.1(b)-(c) (as added).

i. Enhanced Conflict-of-Interest Provisions: The conflict-of-interest prohibitions applicable to commissioners, the Secretary of Energy, their spouses and children, and commission employees are expanded. Utilities regulated by the PSC may not make campaign contributions to any PSC commissioner candidate. Commissioners are expressly subject to the State Ethics Act. Ala. Code § 37-1-5 (as amended).

### E. Plaintiff's Candidacy, Active Campaign, and Reliance on Pre-HB 475 Law

28.    Plaintiff Sheila McNeil was a candidate for Alabama Public Service Commission, Place 2 - one of the two Associate Commissioner seats that were up

for election in 2026. Plaintiff seeks to be a Democratic candidate seeking to represent all Alabamians in her capacity as a statewide, at-large public utility regulator.

29.    Plaintiff undertook the following specific campaign activities in direct reliance on the law as it existed at the time she qualified, all of which are documented in her contemporaneous campaign records and public filings:

   a. January 5-23, 2026: Plaintiff participated in the Alabama Democratic Party candidate qualifying period for the 2026 election.

   b. January 20, 2026: Plaintiff paid her qualifying fee to the Alabama Democratic Party.

   c. January 22, 2026: Plaintiff held a press conference at the Alabama Democratic Party Office in Montgomery, Alabama, publicly announcing her candidacy for PSC Commissioner, Place 2, as an at-large statewide office.

   d. January 23, 2026: Plaintiff received confirmation of the registration of her Principal Campaign Committee.

   e. February 2026: Plaintiff observed widespread public concern regarding high Alabama Power utility bills, as reflected in constituent communications and social media activity (e.g., Facebook pages "Alabama Power Corruption" and "Energy Alabama"). Plaintiff identified utility affordability and accountability as the central issue of her campaign. This heightened public awareness of PSC accountability was consistent with a broader regional trend: in November

2025, a special election for two seats on the Georgia Public Service Commission the regulatory body overseeing Georgia Power, a subsidiary of Southern Company (the same parent company as Alabama Power) had resulted in both contested seats being won by Democratic candidates, overturning prior Republican control. That Georgia election had raised awareness throughout the South of the direct impact that utility regulators have on ratepayers, and contributed to the high level of public engagement with the 2026 Alabama PSC election cycle, which drew at least ten candidates (four Democratic, six Republican) for two PSC seats possibly the highest number of candidates ever to qualify for Alabama PSC races.

f.  February 3 - April 30, 2026: Plaintiff traveled to and campaigned in at least fourteen Alabama counties: Clay, DeKalb, Jefferson, Lee (via Zoom), Blount, Cleburne, Cullman (Hanceville), Jackson, Madison, Marshall, Montgomery (twice - once in person, once via Zoom), Shelby, Talladega, and Tallapoosa Counties.

g.  February 11, 2026: Plaintiff sent a mass email to Alabama legislators formally opposing SB 268 and HB 392, demonstrating her active and public engagement in the legislative process from the outset of the 2026 session.

h.  March 12, 2026 and March 16, 2026: Plaintiff issued press releases opposing SB 360 to statewide media, titled respectively "Immediate Press Release: Stop

Alabama Senate Bill 360: A Threat to Consumer Voice and Accountability" and "For Immediate Release - SB 360: 'A Power Grab Dressed Up as Reform.'"

i. April 1, 2026: Plaintiff sent a mass email to Alabama legislators opposing HB 475.

j. April 3, 2026: Plaintiff issued a press release opposing HB 475 to statewide media, titled "McNeil Campaign: HB 475 Dismantles Oversight and Hands Utilities a Blank Check."

30. Despite Plaintiff's repeated and formal public opposition to each legislative vehicle that sought to restructure the PSC - SB 268, HB 392, SB 360, and ultimately HB 475 as amended, the Act was enacted on April 3, 2026 without any process to address the impact on candidates already in the field, and without any mechanism for those candidates to challenge the structural changes before they take effect.

31. The electoral consequences of HB 475's enactment are already materializing. On April 20, 2026, John Northrop, a Democratic candidate for PSC Place 1, withdrew from the race, citing the enactment of the new law as his reason for withdrawal. His withdrawal is direct, concrete evidence that HB 475 has already disrupted the election cycle and caused candidates to abandon their campaigns precisely the kind of irreversible electoral harm the Purcell principle is designed to prevent. Plaintiff faces the same pressures and is entitled to the same judicial

protection that would have applied to Mr. Northrop had he sought relief rather than withdrawn.

32.    The harm to Plaintiff is concrete and ongoing. The at-large statewide seat she sought no longer exists under HB 475. Her campaign infrastructure built on a statewide organizing model, statewide fundraising, and a platform premised on independent, at-large regulatory authority cannot be re-deployed to a fundamentally restructured race without irreversible cost. The commission she would join, if elected, will be directed by a Governor's appointee. The appointment of four interim commissioners by July 15, 2026 will foreclose any meaningful electoral determination of the commission's composition before the 2026 election even occurs.

## V.  CLAIMS FOR RELIEF

## COUNT I

### EQUAL PROTECTION - MID-ELECTION CANDIDATE AND VOTER DISCRIMINATION
*(42 U.S.C. § 1983; U.S. Const. amend. XIV, § 1)*

33.    Plaintiff incorporates by reference paragraphs 1-32 as if fully alleged herein.

34.    The Equal Protection Clause of the Fourteenth Amendment prohibits the State from invidiously discriminating among citizens with respect to the right to vote and the right to participate in electoral processes on equal terms. Anderson v. Celebrezze,

460 U.S. 780 (1983); Storer v. Brown, 415 U.S. 724 (1974). Laws that severely burden the rights of candidates and voters to participate in elections are subject to close scrutiny and must be narrowly drawn to serve a compelling state interest.

35.    Plaintiff qualified for PSC Commissioner, Place 2 in January 2026 under the rules then in force. Candidates who may file for the newly-configured, district-based PSC seats created by HB 475, if any such filing occurs will compete under entirely different structural rules. Plaintiff and similarly-situated candidates are unconstitutionally discriminated against: they filed, organized, and invested resources in a statewide at-large race, only to have the office transformed mid-campaign into something fundamentally different.

36.    The Act imposes an undue burden on Plaintiff's candidacy and on the rights of voters who supported her campaign for the at-large commission. The disruption changing the geographic scope of the race, the nature of the office, and the institutional authority of elected commissioners is severe, and is in no way narrowly tailored to a compelling state interest. The State could achieve any legitimate regulatory reform goals by implementing changes after the conclusion of the election cycle already underway.

37.    The structural provisions of HB 475 are not rationally related let alone narrowly tailored to any legitimate state interest that justifies imposing them in the

middle of an ongoing election without any accommodation for candidates already in the field.

38.    The Law must be "closely scrutinized" due to the real and appreciable impact on the exercise of the franchise it has, particularly with implementation occurring after some voters have already begun voting.

39.    Plaintiff in her status as a candidate is not the only party meaningfully harmed by the Law; Plaintiff in her status as a voter is as well, as it remains unclear whether voters across the state are or are not going to be able to vote for their own representation on the Commission.

40.    As a direct and proximate result of these equal protection violations, Plaintiff and the voters she seeks to represent have suffered and will continue to suffer irreparable harm.

## COUNT II

### SUBSTANTIVE DUE PROCESS
*(42 U.S.C. § 1983; U.S. Const. amend. XIV, § 1)*

41.    Plaintiff incorporates by reference paragraphs 1-32 as if fully alleged herein.

42.    The substantive component of the Due Process Clause of the Fourteenth Amendment protects individuals against arbitrary and capricious governmental action that either shocks the conscience or bears no rational relationship to a

legitimate governmental interest. Where a fundamental right including the fundamental right to vote and to participate in the electoral process as a candidate is at stake, the challenged action is subject to strict scrutiny. Burdick v. Takushi, 504 U.S. 428 (1992); Williams v. Rhodes, 393 U.S. 23 (1968).

43.    Plaintiff possesses protected liberty and property interests in:

a.  her candidacy for the office of PSC Commissioner, Place 2, as constituted under the law in force at the time she qualified, paid her fee, announced her candidacy, and registered her campaign committee;

b.  the structural integrity and independent authority of that office as the electorate understood it when Plaintiff entered the race; and

c.  the equitable and consistent conduct of the election in which she is a participant.

44.    HB 475 arbitrarily and fundamentally alters each of these protected interests. By expanding the PSC to seven district seats, requiring four gubernatorial interim appointments before the election, creating a Governor-appointed administrator who controls the commission's agenda and personnel, and imposing a six-year term for newly elected commissioners, HB 475 transforms the office mid-campaign without any rational accommodation for candidates who entered the race under the prior structure.

45.    The Secretary of Energy provision is particularly arbitrary in the substantive due process sense: it strips elected commissioners of the core executive and quasi-legislative functions, agenda-setting, personnel authority, administrative direction and vests them in a gubernatorial appointee answerable only to the Governor. In doing so, HB 475 converts the office of PSC Commissioner from a position of independent regulatory authority into one that is substantially subordinate to the executive branch. A candidate who won this office in 2026 would serve on a commission whose agenda is controlled not by the elected commissioners but by someone the Governor selected.

46.    The interim appointment of four commissioners by July 15, 2026, before the November 2026 election creates an irreversible structural fait accompli that forecloses meaningful democratic determination of the commission's composition. Voters who cast ballots in November 2026 for PSC commissioners will do so knowing that four of seven seats are already filled by gubernatorial appointees. The Act imposes structural consequences on the election before the election occurs.

47.    These actions are unreasonable and significantly harmful to Plaintiff and her constitutional rights. The same results could be achieved through the far less disruptive alternative of waiting until the conclusion of the election cycle already underway. Alabama's PSC was fully functional and capable of serving ratepayers throughout the pendency of this litigation under the pre-HB 475 structure.

48. As a direct and proximate result of HB 475's substantive due process violations, Plaintiff has suffered and will continue to suffer irreparable harm to her protected interests in her candidacy and in the office she seeks.

## COUNT III

### PROCEDURAL DUE PROCESS
*(42 U.S.C. § 1983; U.S. Const. amend. XIV, § 1)*

49. Plaintiff incorporates by reference paragraphs 1-32 as if fully alleged herein.

50. The procedural component of the Due Process Clause of the Fourteenth Amendment requires that before the State deprives a person of a protected liberty or property interest, it must provide constitutionally adequate process including notice and a meaningful opportunity to be heard. Mathews v. Eldridge, 424 U.S. 319 (1976); Board of Regents v. Roth, 408 U.S. 564 (1972).

51. Plaintiff possesses cognizable liberty and property interests in:

a. her candidacy for PSC Commissioner, Place 2, under the rules and structural framework in effect at the time she qualified;

b. the integrity and authority of the office she seeks, as constituted when she entered the race; and

c. the conduct of the 2026 election under the rules on which she and other candidates justifiably relied in making their decisions to run.

52.    These interests were established by Alabama law and by the specific, individualized acts Plaintiff undertook in reliance on that law paying a qualifying fee, registering a campaign committee, publicly announcing her candidacy, and building a statewide campaign organization over a period of months.

53.    HB 475 was enacted without providing candidates already in the field, including Plaintiff, any individualized notice that the fundamental character of the office they sought would be restructured, or any meaningful opportunity to be heard before that restructuring took effect. While the general public may participate in the legislative process, that generalized legislative process does not constitute constitutionally adequate procedural protection for those with individualized, particularized protected interests in an ongoing election.

54.    Plaintiff's interest is not the generalized interest of a member of the public in how the PSC is structured. It is the specific, particularized interest of a person who has incurred concrete legal obligations, financial commitments, and public representations in connection with her candidacy for a specific, identified office under specific, identified rules. That particularized interest warrants procedural protection that the legislative process alone cannot provide.

55.    The State has deprived Plaintiff of protected interests without constitutionally adequate process, in violation of the Due Process Clause of the Fourteenth Amendment.

56.    As a direct and proximate result of HB 475's procedural due process violations, Plaintiff has suffered and will continue to suffer irreparable harm.

## COUNT IV

### DECLARATORY AND INJUNCTIVE RELIEF
*(28 U.S.C. §§ 2201-2202; Fed. R. Civ. P. 65)*

57.    Plaintiff incorporates by reference paragraphs 1-32 as if fully alleged herein.

58.    An actual and justiciable controversy exists between Plaintiff and Defendants regarding the constitutionality of HB 475. Plaintiff faces direct, immediate, and concrete harm from the Act's implementation. The appointment list deadline of June 1, 2026, the gubernatorial appointment deadline of July 15, 2026, and the Act's general effective date of June 1, 2026 all present imminent, irreversible adverse consequences to Plaintiff.

59.    Pursuant to 28 U.S.C. §§ 2201-2202, Plaintiff seeks a declaration that HB 475, in whole or in material part, violates the Equal Protection Clause, the Voting Rights Act, and the Due Process Clause of the United States Constitution, and is therefore null, void, and unenforceable.

60.    Alternatively, Plaintiff seeks a declaration that, in order to maintain constitutionality as to her rights under the Equal Protection Clause, the Law must be read to mean that the Commissioners elected in November 2026 represent the state as a whole rather than individual districts.

61. Plaintiff satisfies all four requirements for preliminary injunctive relief under the standard of Winter v. Natural Resources Defense Council, 555 U.S. 7 (2008):

a. Likelihood of Success on the Merits: Plaintiff is likely to succeed on each of her constitutional and statutory claims. HB 475 restructures a statewide elected commission mid-campaign, dilutes minority voting power by replacing an at-large system with district boundaries already under VRA scrutiny, deprives candidates of protected interests without due process, and vests the commission's administrative authority in a gubernatorial appointee immune from democratic accountability.

b. Irreparable Harm: The harm to Plaintiff's candidacy, to the voting rights of Alabamians, and to the integrity of the 2026 PSC election is irreparable and cannot be compensated by money damages. Once four interim commissioners are appointed and seated, the structural reconstitution of the PSC cannot be undone regardless of the outcome of this litigation. Campaign investments lost cannot be recovered. Electoral momentum disrupted cannot be restored. Time is of the essence.

c. Balance of Equities: The balance of equities tips sharply in Plaintiff's favor. The State loses nothing by maintaining the pre-HB 475 PSC structure through the November 2026 election. The commission remains fully functional and capable of serving Alabama ratepayers. By contrast, Plaintiff and similarly-

situated candidates will suffer the permanent, irreversible destruction of their campaigns and the deprivation of constitutional rights if relief is denied.

d. Public Interest: The public interest strongly favors injunctive relief. Preserving the integrity of ongoing elections, protecting minority voting rights, and ensuring that Alabama's utility regulator is constituted through a democratic process free from mid-election manipulation are compelling public interests. The public interest is not served by allowing the Legislature to restructure a statewide elected office in the middle of the election cycle in which the public has already begun to exercise its democratic voice.

## VI.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Sheila McNeil respectfully requests that this Court enter judgment in her favor and against Defendants, and grant the following relief:

A.    A temporary restraining order and/or preliminary injunction, issued on an expedited basis, enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from:

a. soliciting, receiving, or transmitting candidate lists for interim PSC commissioner appointments under HB 475;

b. making any interim appointments to the PSC under HB 475;

    c. implementing or giving effect to the seven-district commissioner structure established by HB 475;

    d. taking any action to establish the position of Secretary of Energy; and

    e. otherwise implementing, enforcing, or giving effect to the structural provisions of HB 475, pending final resolution of this action;

B.     A declaratory judgment that HB 475, in whole or in material part, violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, including as applied to candidates and voters in the ongoing 2026 election cycle;

C.     A declaratory judgment that HB 475, in whole or in material part, violates Section 2 of the Voting Rights Act of 1965, 52 U.S.C. § 10301, by diluting the voting power of minority communities in the election of PSC commissioners;

D.     A declaratory judgment that HB 475, in whole or in material part, violates the substantive component of the Due Process Clause of the Fourteenth Amendment;

E.     A declaratory judgment that HB 475, in whole or in material part, violates the procedural component of the Due Process Clause of the Fourteenth Amendment;

F.     A declaratory judgment that, under HB 475, the Commissioners elected in November 2026 represent the state as a whole rather than individual districts.

G.     A permanent injunction enjoining Defendants from implementing or enforcing HB 475's structural provisions as applied to the 2026 election cycle, including unless and until the Act's constitutional deficiencies are cured;

H.     An order that the 2026 PSC election proceed under the at-large structure established by pre-HB 475 law, including that PSC Commissioner, Place 2, be contested as a statewide at-large seat as provided under Ala. Code § 37-1-3 prior to amendment;

I.     An award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988, 52 U.S.C. § 10310(e), and other applicable law; and

J.     Such other and further relief as this Court deems just, proper, and equitable.


Respectfully submitted,


*/s/Richard A. Rice*
**RICHARD A. RICE**
*/s/Spencer E. Bowley*
**SPENCER E. BOWLEY**
**ATTORNEYS FOR PLAINTIFF**
**THE RICE FIRM, LLC**
115 Richard Arrington Jr. Blvd. N.
Birmingham, AL 35203
P: 205.618.8733 F: 205.391.7193
E: rrice@rice-lawfirm.com
E: spencer@rice-lawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 21, 2026, a copy of the foregoing document was served upon all counsel of record via electronic filing.

Steve Marshall
Attorney General
James W. Davis (ASB-4063-I58J)
Richard D. Mink (ASB-4802-M76R)
Misty S. Fairbanks Messick (ASB-1813-T71F)
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Jim.Davis@AlabamaAG.gov
Richard.Mink@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov

*/s/Spencer E. Bowley*
Spencer E. Bowley

- 33 -