**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| SHEILA McNEIL, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 2:26-cv-00411-BL-KFP |
| | ) | |
| HON. KAY IVEY, in her official | ) | |
| capacity as Governor of the State | ) | |
| of Alabama, *et al.*, | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**STATE DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT (DOC. 21) & BRIEF IN SUPPORT**

Steve Marshall
  *Attorney General*
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Richard D. Mink (ASB-4802-M76R)
Misty S. Fairbanks Messick (ASB-1813-T71F)
  *Assistant Attorneys General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Jim.Davis@AlabamaAG.gov
Richard.Mink@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov

*Counsel for the State Defendants*

1

**TABLE OF CONTENTS**

State Defendants' Motion to Dismiss Amended Complaint & Brief in Support.......3

I. Factual Background ...................................................................................................3

II. Legal Standard.......................................................................................................4

III. Argument...............................................................................................................5

    A. The PSC Place 2 race on the ballot in 2026 remains statewide ........................5

    B. *Anderson - Burdick* does not apply ..................................................................6

    C. The *Purcell* Principle does not apply ...............................................................8

    D. Candidates do not have veto power over the State when it comes to controlling State entities ..............................................................................................................9

    E. McNeil fails to allege an injury sufficient to support standing. ......................12

    F. In the alternative, ripeness bars McNeil's claims as to whether her constituency will somehow be confined to a district ...............................................................17

    G. Standing and immunity bar McNeil's claims as to State officials who do not implement challenged aspects of Ala. Act No. 2026-345....................................17

    H. To the extent that McNeil is trying to stop Governor Ivey from appointing four new Commissioners, her claims are moot ...........................................................20

    I. McNeil fails to state a Voting Rights Act claim ..............................................21

    J. McNeil is not entitled to a jury trial ................................................................24

IV. Conclusion............................................................................................................24

**STATE DEFENDANTS' MOTION TO DISMISS
AMENDED COMPLAINT & BRIEF IN SUPPORT**

Sheila McNeil, the 2026 Democratic nominee for Place 2 on the Public Service Commission, challenges recent legislative changes to the PSC specifically because those changes were enacted during the ongoing election cycle. Much of the complaint is premised on a misunderstanding of the challenged law. Under Ala. Act No. 2026-345, Place 2 remains subject to statewide election this year. The Amended Complaint adds allegations about whether, if McNeil won, the office would serve a statewide or district constituency, *see e.g.,* doc. 21 at 15 ¶ 27(a), but those concerns are speculative. Further, the Equal Protection Clause and Due Process Clause do not provide any citizen with general veto power over the State when it comes to structuring and directing entities created by the State, and candidates are no exception. For these and other reasons, the Court should dismiss.

## I. FACTUAL BACKGROUND

McNeil alleges there has been a "public groundswell of support for PSC reform" this year, doc. 21 at 8 ¶ 13, with "approximately 80% of respondents" to a poll of "Republican voters" "identifying cost-of-living as their top concern[,] a finding that underscores why PSC reform, and particularly, the issue of utility rates, had become a focal point of the 2026 legislative session and election cycle," *id.* at 9 at ¶ 17. The Legislature responded with Ala. Act No. 2026-345.  Doc. 23-1.

The Act expands the PSC from three Commissioners to seven. Doc. 23-1 at 2-3, *ll.* 27–31.[1] Over time, the Act provides for a transition from statewide elections to districted elections. *Id.* at 3-5 *ll.* 38-107. As a part of this transition, the Governor was required to appoint, "[n]o later than July 15, 2026," four new Commissioners who will "serve initial terms" of two years or four years "beginning January 18, 2027." *Id.* at 4, *ll.* 69-72. The Act also establishes the Cabinet position of Secretary of Energy as the administrative head of the PSC beginning January 19, 2027. *Id.* at 7-8 *ll.* 158-85. The Secretary is "appointed by and serve[s] at the pleasure of the Governor," *id.* at 7 *ll.* 160-61, and so is politically accountable in that way.

The Act also covers a number of matters related to the PSC that have nothing in particular to do with the Governor or Attorney General, the State Defendants here.

## II. LEGAL STANDARD

With respect to Fed. R. Civ. P. 12(b)(1), an attack may be facial or factual. *Stalley ex rel. U.S. v. Orlando Regl. Healthcare System, Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam). For facial attacks, the court accepts the allegations in the complaint as true and determines "if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *Id.* (internal quotation marks and citation omitted). For factual attacks, extrinsic material may be used. *Id.* at 1233.

---

[1]    Page numbers are the CM/ECF numbers.

With respect to Fed. R. Civ. P. 12(b)(6), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). As opposed to facts, legal conclusions are not accepted as true. *Id.*

### III. ARGUMENT

**A. The PSC Place 2 race on the ballot in 2026 remains statewide.** McNeil alleges otherwise, asserting, for instance, that she had "begun active statewide campaigning," doc. 21 at 2 ¶ 1, and "traveled to and campaigned in at least fourteen Alabama counties," *id.* at 19 ¶ 29(f), when "the geographic scope of the race" changed, *id.* at 22 ¶ 36. She prays the Court will "order that the 2026 PSC election proceed under the at-large structure" in place before Ala. Act No. 20026-345, including that the PSC 2 race "be contested as a statewide at-large seat," doc. 21 at 32 ¶ H.

Ala. Act No. 2026-345 expressly provides that two commissioners will be elected *statewide* in November 2026. It says: "At the general election held in November 2026, two commissioners shall be elected *in the same manner as commissioners were elected before June 1, 2026*, as provided in subdivision (a)(2)." Doc. 23-1 at 5 *ll.* 87-90 (emphasis added). And, subdivision (a)(2) of Ala. Code § 37-1-3—just cross-referenced—makes clear that, through November 2026, the PSC

Commissioners "shall be elected by the qualified electors of the state." Doc. 23-1 at 3 *ll.* 41-47. It is beginning in 2028, and continuing through 2032, that the PSC Commissioners will be elected from districts, so that all Commissioners will represent districts effective January 2033. *Id.* at 4-5 *ll.* 65-107. Consistent with this six-year transition, the term of office up for election in 2026 has been extended from four years to six years. *Id.* at 3 *ll.* 33-37 (four years); *id.* at 5 *ll.* 108-11 (six years).

McNeil's claims fail to the extent that they are premised on her erroneous belief that the 2026 PSC Place 2 race has become a districted race. *See* doc. 21 at 21-22 ¶¶ 35-36 (Equal Protection); *id.* at 24 ¶ 43(a) & (c) (Substantive Due Process); *id.* at 26 ¶¶ 51(a) & (c), 50 (Procedural Due Process). The race remains statewide.[2]

**B.    *Anderson - Burdick* does not apply.** The *Anderson – Burdick* framework—on which McNeil relies, doc. 21 at 21-22 ¶ 34 (Equal Protection); *id.* at 23-24 ¶ 42 (Substantive Due Process)—was developed in a line of precedents including *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). It "requires [courts] to weigh the character and magnitude of the asserted First and Fourteenth Amendment injury against the state's proffered justifications for the burdens the state imposes, taking into consideration the extent to which those justifications require the burden to plaintiffs' rights." *Polelle v. Fla.*

---

[2]    To the extent that McNeil's claims are based on whether, if elected, she would represent a statewide or district constituency, those concerns are speculative as discussed *infra* with other jurisdictional arguments.

*Sec'y of State*, 131 F.4th 1201, 1230 (11th Cir. 2025) (cleaned up). The "analysis follows a sliding scale," imposing greater scrutiny as the burden on "a plaintiff's speech, association, or voting rights" increases. *Id.* at 1230-31.

Typical cases analyzed under the *Anderson – Burdick* framework involve things like the burden for a candidate or political organization to get on the ballot. For example*, Anderson* concerned John Anderson's challenge to Ohio's deadline for an independent candidate for President to get on the 1980 ballot, 460 U.S. at 782, and *Storer v. Brown*, cited by McNeil, doc. 21 at 22 ¶ 34, also involved requirements for independent candidates seeking ballot access, 415 U.S. 724, 726-27 (1974). *Williams v. Rhodes*, also cited by McNeil, doc. 21 at 24 ¶ 42, concerned the Ohio American Independent Party and the Socialist Labor Party seeking ballot access, 393 U.S. 23, 24-28 (1968). *Burdick* concerned "whether Hawaii's prohibition on write-in voting unreasonably infringes upon its citizens' rights," 504 U.S. at 430.

It may well be that a "mid-campaign" "chang[e to] the geographic scope of the race," doc. 21 at 22 ¶¶ 35-36, would appropriately be analyzed under the *Anderson – Burdick* framework, *if* it existed (and *if* McNeil sued the appropriate defendant). However, since McNeil's race remains statewide, no burden exists and McNeil's *Anderson – Burdick* claims fail.

None of the other things about which McNeil complains involve the mechanics of an election. For instance, if McNeil means to challenge the

7

restructuring of the PSC, doc. 21 at 22-23 ¶¶ 35-37; *id.* at 24-25 ¶¶ 43-47, that is a change in "governance," not voting, *cf. Presley v. Etowah Cnty. Comm'n*, 502 U.S. 491, 510 (1992). The *Anderson – Burdick* framework does not apply.

**C. The *Purcell* Principle does not apply.** The *Purcell* Principle takes its name from *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (*per curiam*), which recognized that "[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls," *id.* at 4-5. Even assuming *arguendo* that switching from a statewide race to a districted one during an election is the sort of thing that the *Purcell* Principle concerns, it has not happened here, for the reasons discussed *supra.* None of the other things about which McNeil complains involve the mechanics of an election (and neither of the State Defendants are election officials).

Moreover, the *Purcell* Principle is about court orders, not legislation; that is, it imposes limits on courts, not State Legislatures. As the Supreme Court has recently explained, "While federal courts should not impose changes close to an election, States are free to decide for themselves whether last-minute changes to an election are in their best interests." *Allen v. Milligan*, 608 U.S. ___, 146 S.Ct. 1377, 1381 (2026) (*per curiam*) (citation omitted). The Court did so in the context of a federal district court in Alabama having enjoined enforcement of a State law in part based on the *Purcell* Principle. *Id.*; *id.* at 1384 (Sotomayor, J., dissenting). Accordingly,

McNeil's reliance on the *Purcell* Principle, *e.g.,* doc. 21 at 3 ¶ 4(a); *id.* at 20 ¶ 31, is misplaced.

**D. Candidates do not have veto power over the State when it comes to controlling State entities.** To the extent that McNeil's claims are grounded in some particularized right she claims to have as a candidate—*see e.g.,* doc. 21 at 22 ¶ 36 (Equal Protection, "nature of the office[] and the institutional authority of the elected commissioners"); *id.* at 24 ¶ 43 (Substantive Due Process, asserting "protected liberty and property interests"); *id.* at 26 ¶ 51 (Procedural Due Process, asserting "cognizable liberty and property interests"); *id.* at 27 ¶ 52 ("These interests were established by Alabama law …."))—her claims fail. *King v. Campbell*, 988 So.2d 969 (Ala. 2007), is instructive.

In *King v. Campbell*, plaintiffs sued to challenge an Act concerning the creation of an additional Circuit Judgeship in Alabama's 29th Judicial Circuit. *Id.* at 971-73. The judgeship was first created in 1985 to be filled at the 1988 General Election, but subsequent legislation repeatedly delayed at which election the seat would be filled. *Id.* at 971-73. In 2006, legislation provided that the Governor would first make an appointment and then the seat would be filled at the 2010 General Election. *Id.* at 972-73. Pertinent here, Chad Woodruff qualified with the Alabama Democratic Party and the Party certified him as their unopposed nominee *before* the 2006 Act became law. *Id.* at 972-73. The Supreme Court of Alabama rejected an

argument that "Woodruff's status as the nominee of the Alabama Democratic Party made him a 'quasi-incumbent'" "and thereby insulated from the effects of the abolition of the office." *Id.* at 979.

The Court reasoned that "a public office that is a creature of the legislature confers no vested right." *Id.* Quoting from an 1891 decision, the Court elaborated:

> When an office is not provided for by the Constitution, but is the creature of statute, there is no element of contract between the officer chosen and the public, or constituent body which confers the office. *Being created, and its functions and emoluments conferred, by the legislature, the same body may abolish it, take away or reduce its functions and emoluments, or make any change its wisdom or caprice may suggest, not inhibited by the organic law.*

*King*, 988 So.2d at 979 (quoting *Lane v. Kolb*, 9 So. 873, 874 (Ala. 1891)) (emphasis added).

The Legislature created the PSC, Ala. Code § 37-1-1; *see also* doc. 23-1 at 2-3 *ll.* 26-31, and the Legislature can abolish or alter the PSC, *King*, 988 So.2d at 979. McNeil's status as a candidate and as the Democratic Party's nominee does not impact that. *Id.* She has no State-law created "protected liberty and property interests," doc. 21 at 24 ¶ 43, or "cognizable liberty and property interests," *id.* at 26 ¶ 51, in the PSC remaining unchanged just because she is a party nominee.

**1.** Given all this, and focusing on McNeil's Substantive Due Process claim, McNeil cannot show that she has any right that is "deeply rooted in our history and tradition and essential to our Nation's scheme of ordered liberty." *Eknes-Tucker v.*

10

*Governor of Ala.*, 80 F.4th 1205, 1220 (11th Cir. 2023) (cleaned up).  Accordingly, rational basis applies, *id.*, and is easily satisfied. There is no single right answer to the number of seats that should be on the PSC (if any) or how long the terms of office should be or whether the PSC should stand apart from numerous Cabinet agencies run by Secretaries and Commissioners accountable to the Governor. *Cf. Holder v. Hall*, 512 U.S. 874, 881 (1994) (holding plaintiffs could not bring a challenge under § 2 of the Voting Rights Act to the size of a government body in part because "[t]here is no principled reason why one size would be picked over another as the benchmark for comparison").

To the extent that McNeil complains that "the election cycle [is] already underway," doc. 21 at 25 ¶ 47, as a factual matter, Ala. Act No. 2026-345 did accommodate current candidates by continuing those offices and allowing candidates to continue to run statewide this year, as discussed *supra*. Indeed, those accommodations—and the fact that the appointed Commissioners do not take office until January, doc. 23-1 at 4 *ll.* 69-71, and the Secretary of Energy position "is created" in January, *id.* at 7 *ll.* 158-60, mean the Legislature has "wait[ed] until the conclusion of the election cycle already underway" for changes to be implemented, as McNeil wants, doc. 21 at 25 ¶ 47.  As a legal matter, if McNeil were right that she could force the Legislature to delay the challenged changes, PSC employees could likewise complain that any changes they might dislike were not delayed until after

they were off probation, vested in the retirement system, or eligible to retire. That is not the law.

**2.** Similarly, McNeil is wrong to assert she has "interests … established by Alabama law," doc. 21 at 27 ¶ 52, to support her Procedural Due Process claim. Her asserted interests in her election not being statewide is misplaced for the reasons addressed *supra*. Her concerns about the changes to the PSC itself do not provide her any State-created interests, *King*, 988 So.2d at 979; *Lane*, 9 So. at 874, that could conceivably entitle her to individualized process. Legislation impacting citizens is enacted all the time without individualized notice for candidates, employees, or anyone else. And, in any event, McNeil's complaint makes plain she was aware of the need to watch that process and voice any concerns, doc. 21 at 9-14 ¶¶ 17-26 (describing legislative events and McNeil's responses). Indeed, she alleges she was "active[ly] and public[ly] engage[d] in the legislative process from the outset of the 2026 session." Doc. 21 at 19-20 ¶ 29 (describing "mass email[s] to Alabama legislators" and press releases). McNeil fails to state a Procedural Due Process claim.

**E. McNeil fails to allege an injury sufficient to support standing.** "One element of the case-or-controversy requirement" of Article III "is that plaintiffs must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal quotation marks and citations omitted). The first requirement of standing is that McNeil "must have suffered an injury in fact—an

invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (cleaned up); *see also Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 925 (11th Cir. 2020) (*en banc*) ("A plaintiff needs to plead (and later support) an injury that is concrete, particularized, and actual or imminent, rather than conjectural or hypothetical") (footnote omitted). Given that McNeil has no special status as a candidate, she asserts generalized interests that do not support standing; to the extent she asserts particularized interests as a future Commissioner, her injuries are speculative, and her concerns about how the law will be interpreted next year are doubly so (and trigger federalism issues).

**1.** "For an injury to be particularized, it must affect the plaintiff in a personal and individual way. General interests common to all members of the public are not particularized injuries." *Quinn v. Sec'y of State for Georgia*, 175 F.4th 1309, 1315-16 (11th Cir. 2026) (cleaned up). But, to the extent that McNeil's claims are that she does not approve of the changes Ala. Act No. 2026-345 makes to the PSC, that is all she has asserted. *See e.g.,* doc. 21 at 22 ¶ 36 (Equal Protection, "the nature of the office[] and the institutional authority of elected commissioners"); *id.* at 24 ¶ 43(b) (Substantive Due Process, "the structural integrity and independent authority of that office"); *id.* at 25 ¶ 45 (same, creation of Secretary of Energy); *id.* at 27 ¶ 53 (Procedural Due Process, "fundamental character of the office … would be

13

restructured"). These are not a candidate's concerns about the election rules, *contra Bost v. Ill. State Bd. of Elections*, 607 U.S. 71 (2006) (counting mail-in ballots), but an informed citizen's concerns about how a State entity is run.

To the extent that McNeil claims a particularized interest because, as a candidate, she may well be elected to the PSC—*see e.g.*, amended complaint excerpts just cited—it is entirely speculative, or conjectural, whether she will win the election. This Court can take judicial notice that the Alabama Republican Party is competing for the Place 2 seat. Fed. R. Evid. 201(b); *see also SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).[3] The Party has certified Jim "Zig" Zeigler as its PSC Place 2 candidate. *See* doc. 23-2 at 1; *cf.* doc. 21 at 19 ¶ 29(e) (alleging six Republican candidates qualified to run for PSC this year). McNeil is not guaranteed to win Place 2.

McNeil's allegations about the creation of the Secretary of Energy post and the new 6-year term are on similar ground. *See e.g.,* doc. 21 at 3 ¶ 3(c), 13 ¶ 24, 16 ¶¶ 27(d) & (f), 24 ¶ 44. As a citizen, her complaints are generalized, and as a candidate, her complaints are speculative. That matters because "[s]tanding is not dispensed in gross[;] [r]ather, a plaintiff must demonstrate standing for each claim

---

[3]   Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *see also SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) ("In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged.").

[s]he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 733-34 (2008) (internal quotation marks and citations omitted). In short, McNeil has a laundry list of things she does not like about Ala. Act No. 2026-345, but she fails to demonstrate that she faces a particularized and imminent injury from each.

**2.** To the extent that McNeil is concerned about whether, as a successful candidate, she would represent a statewide constituency or be assigned to represent a district, doc. 21 at 15 ¶ 27(a), she adds another layer of speculation. For that question to present itself, first McNeil would have to win the election, which is not guaranteed, *supra*, and, second, she would have to somehow be required by someone—who may or may not be a defendant—to represent a particular district. The Supreme Court has "repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient." *Clapper*, 568 U.S. at 409 (cleaned up). So, only if McNeil won and was somehow required to represent a district, might she be able to bring a claim—against an appropriate defendant—that her Equal Protection rights have been violated.[4]

---

[4]    The State Defendants reserve the right to argue that politicians cannot be forced to represent a particular constituency, only elected from a particular electorate.

**3.** McNeil's concerns about what constituency she would represent, if she won, run headlong into another problem. As to this argument, what she really wants is an authoritative interpretation of how the Act should be read. Doc. 21 at 28 ¶ 60 ("Alternatively, Plaintiff seeks a declaration that, in order to maintain constitutionality as to her rights under the Equal Protection Clause, the Law must be read to mean that the Commissioners elected in November 2026 represent the state as a whole rather than individual districts.").

That ask is complicated because she filed suit in federal court. It is the Supreme Court of Alabama that is "unquestionably 'the ultimate expositor of state law.'" *Riley v. Kennedy*, 553 U.S. 406, 426 (2008) (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975)) (alteration adopted). By contrast, "when [federal courts] write to a state law issue, [they] write in faint and disappearing ink." *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir. 2002) (internal citations and quotation marks omitted).

Moreover, the Eleventh Amendment prevents federal courts from "instruct[ing] state officials on how conform their conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *see also Doe v. Bush*, 261 F.3d 1037, 1055 (11th Cir. 2001).

So, federalism principles mean McNeil cannot get an authoritative ruling from this Court about how Alabama officials should read Alabama law on its own terms.

16

McNeil's contortions in requesting a ruling that her federal rights would be violated—if she were elected and if the law were interpreted in a particular way— appear to be an attempt to navigate these federalism issues, but fail as speculative.

**F. In the alternative, ripeness bars McNeil's concerns as to whether her constituency will somehow be confined to a district.** Article III requires that cases "be ripe—not dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 592 U.S. 125, 131 (2020) (*per curiam*) (cleaned up). As already discussed, McNeil's concerns about her constituency depend on her first being elected to the PSC and then being required to represent a district, rather than the statewide electorate. Thus, there is "a significant degree of guesswork," *id.* at 132, as to whether the questions she presents to this Court will ever materialize and need to be answered, that is, ever ripen.

**G. Standing and immunity bar McNeil's claims as to State officials who do not implement challenged aspects of Ala. Act No. 2026-345.** As to standing, the second and third requirements are that "there must be a causal connection between the injury and the conduct complained of" and "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560-61 (cleaned up).

Ala. Act No. 2026-345 does not assign the Attorney General any enforcement role, and McNeil does not allege that the Attorney General has injured her in any

way, doc. 21, generally. She sued Attorney General Marshall because he "is charged with defending the constitutionality of Alabama statutes and with enforcing state law." *Id.* at 6 ¶ 11. That is insufficient to establish standing.

"The fact that the Act itself doesn't contemplate enforcement by the Attorney General counts heavily against plaintiffs' traceability argument." *Lewis v. Governor of Alabama,* 944 F.3d 1287, 1299 (11th Cir. 2019) (*en banc*). In *Lewis,* "[i]n the absence of any indication that" the challenged Act "itself contemplate[d] enforcement by the Attorney General, [the] plaintiffs resort[ed] to a host of provisions of the Alabama Code that generally describe the Attorney General's litigating and opinion-giving authority." *Id.* at 1300. The Court rejected all of them. *Id.* at 1296-98 & n.6, 1300-01. McNeil likewise has not established traceability as to the Attorney General. She further has not shown how relief against the Attorney General would make it likely her injury will be redressed.

For the same reasons, the Attorney General has immunity from McNeil's claims. "The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest." *Pennhurst*, 465 U.S. at 101 (internal quotation marks and citations omitted). To enforce the supremacy of federal law, *Ex parte Young*[5] allows for forward-looking injunctions against State officials who are violating federal law. *Pennhurst,* 209 U.S. at 102-06. The bar is jurisdictional.

---

[5]    209 U.S. 123 (1908).

18

*McClendon v. Georgia Dept. of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001), and it has not been waived, Ala. Const. art. I, § 14; *Ala. v. Pugh*, 438 U.S. 781, 782 (1978) (*per curiam*).

"In making an officer of the state a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional, *it is plain that such officer must have some connection with the enforcement of the act*, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157 (emphasis added). Here, McNeil has not identified any connection that the Attorney General has to Ala. Act No. 2026-345. Doc. 21, generally. Indeed, General Marshall is only mentioned near the end where the Act amends certain provisions that deal with elections and terms of office where the Attorney General and PSC Commissioners and others are addressed together. Doc. 23-1 at 11-13, *ll.* 276-321.

These same arguments apply to the Governor to the extent, if any, that McNeil's claims or request for relief go beyond the Governor's receipt of lists of names for potential appointment as PSC Commissioners, the Governor's appointment of four new PSC Commissioners who will take office in January, and the Governor's appointment of a Secretary of Energy serving in the Governor's Cabinet and at the Governor's pleasure, and all that entails. Doc. 23-1 at 4 *ll.* 69-84; *id.* at 7 *ll.* 158-61. If "implementing or giving effect to the seven-district

19

commissioner structure" or "otherwise implementing, enforcing, or giving effect to the structural provisions of" the Act, doc. 21 at 31 ¶ A(c) & (e), constitutes more than that, standing and immunity bar the claim as to the Governor. An injunction as to how the election shall be run, *see id.* at 32 ¶¶ G & H, is likewise barred.

**H. To the extent that McNeil is trying to stop Governor Ivey from appointing four new Commissioners, her claims are moot.** McNeil's Amended Complaint continues to discuss Governor Ivey's appointment of four new PSC Commissioners in the future tense and to assert that she will be irreparably harmed if the Governor makes those appointments. *See e.g.,* doc. 21 at 4 ¶ 5. However, this Court can take judicial notice that the Governor has made the appointments. Fed. R. Evid. 201(b); *see also SFM Holdings, Ltd. v. Banc of Am. Securities, LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

A press release dated June 17, 2026 and available on the official website of the Governor's Office is entitled: *Governor Ivey Announces Public Service Commission Appointments*. Doc. 23-3 at 2.  The substantive text of the press release begins: "Governor Kay Ivey on Wednesday announced she is appointing Ron Burgess, Fred Johnson, Demarcus Joiner and Quinton Ross to the Public Service Commission." *Id.* The official appointment letters reflect that Dr. Johnson and Mr. Joiner will serve two-year terms while Lieutenant General Burgess and Dr. Ross will serve four-year terms, all effective in January 2027. Docs. 23-4 – 23-7. While these

20

appointees have not yet taken office, the Governor has made the appointments and, thus, completed her role as to those appointments.

McNeil's request for relief to prevent the Governor from receiving recommendations or making appointments, doc. 21 at 30, is thus moot. "'A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335-36 (11th Cir. 2001) (*per curiam*) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)) (alteration adopted). "[M]ootness derives directly from the case-or-controversy limitation because 'an action that is moot cannot be characterized as an actual case or controversy.'" *Id.* at 1335 (quoting *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)). "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Id.* at 1336 (internal quotation marks and citations omitted).

**I. McNeil fails to state a Voting Rights Act claim.** McNeil makes passing references to the Voting Rights Act, but she never provides "a short and plain statement of the claim showing that [she] is entitled to relief," Fed. R. Civ. P. 8(a).

Consistent with Fed. R. Civ. P. 10(b), which requires that McNeil "state [her] claims … in numbered paragraphs, each limited as far as practicable to a single set of circumstances" and that, "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence … must be stated in a separate count[,]" the

21

Amended Complaint sets out separate putative Counts. Count I alleges an Equal Protection violation, doc. 21 at 21-23 ¶¶ 33-40, Count II alleges a Substantive Due Process violation, *id.* at 23-26 ¶¶ 41-48, and Count III alleges a Procedural Due Process violation, *id.* at 26-28 ¶¶ 49-56. There is no discrete Count for a Voting Rights Act claim. *Id.* at 21-30 ¶¶ 33-61. In context, this strongly suggests no claim is intended.

Count IV, which is styled as a count for declaratory and injunctive relief, does include the Voting Right Act in a list of claims, *id.* at 28 ¶ 59, and it mentions the VRA in a section on the merits of her request for injunctive relief, *id.* at 29 ¶ 61(a). Count IV does not state any claim since "declaratory and injunctive relief … are prospective remedies," *McKinnon v. Talladega County, Ala.*, 745 F.2d 1360, 1362 (11th Cir. 1984), not claims in and of themselves. *Cf. Datum Software, Inc. v. Citizant, Inc.,* 2024 WL 3719111, at *2 n.3 (11th Cir. 2024) ("Datum also presented declaratory judgment as a claim. But declaratory judgment is a form of relief, not a cause of action. *McKinnon v. Talladega Cnty*, 745 F.2d 1360, 1362 (11th Cir. 1984).").[6]

---

[6]     *See also Earnest v. Lowentritt*, 690 F.2d 1198 (5th Cir. 1982) ("Section 2201 does not provide an independent cause of action for determination of the constitutionality of a statute, but rather is only an avenue for relief in a 'case of actual controversy within (the court's) jurisdiction.'") (quoting 28 U.S.C. § 2201); *Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671 (1950) ("The operation of the Declaratory Judgment Act is procedural only.") (cleaned up).

Adding the Voting Rights Act in passing to Count IV does not move the needle in terms of providing "a short and plain statement of the claim showing that [McNeil] is entitled to relief," Fed. R. Civ. P. 8(a). Instead, the Amended Complaint contains only scattered references to the VRA, doc. 21 at 1, 4 ¶ 6, including requests for relief under the VRA, *id.* at 28 ¶ 59, 31 ¶ C, and a conclusory allegation, *id.* at 3 ¶ 4(b), which is "not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Missing are factual allegations sufficient to "allow[] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged," *id.* at 678. That is particularly true if McNeil's theory concerns the future shift to districted elections, doc. 21 at 3 ¶ 4(b), as the complaint is devoid of factual allegations to support her conclusions, *see Iqbal*, 556 U.S. at 678 (or her standing to assert the claim).

Alternatively, if McNeil's complaint is that the election in which she is running is moving from statewide to districted, that is factually wrong as explained *supra*. And, if her complaint is about the restructuring of the PSC, that is a change in "governance," not voting. *Cf. Presley v. Etowah Cnty. Comm'n*, 502 U.S. 491, 510 (1992). "It is a routine part of governmental administration for appointive positions to be created or eliminated and for their powers to be altered. Each time this occurs the relative balance of authority is altered in some way." *Id.* at 507. "Changes which affect only the distribution of power among officials … have no direct relation to, or

23

impact on, voting." *Id.* at 506; *see also id.* at 506-07. These claims, if made, would fail.

**J. McNeil is not entitled to a jury trial.** "'[T]he right to have a jury determine issues of fact turns essentially on whether the claim to which those issues relate is legal or equitable.'" *Ford v. Citizens & S. Nat'l Bank, Cartersville*, 928 F.2d 1118, 1121 (11th Cir. 1991) (quoting *Hensley v. E.R. Carpenter Co., Inc.*, 633 F.2d 1106, 1110 n. 5 (5th Cir. Unit A 1980)) (alteration by the Court). Here, McNeil seeks declaratory relief and injunctive relief. Doc. 21 at 1, 28-32. "Purely equitable claims, even those involving factual disputes, are matters to be resolved by the court rather than a jury." *Ford*, 928 F.2d at 1122.

## IV. CONCLUSION

The Court should dismiss.

Respectfully submitted,

Steve Marshall
  *Attorney General*

s/Misty S. Fairbanks Messick
James W. Davis (ASB-4063-I58J)
  *Deputy Attorney General*
Richard D. Mink (ASB-4802-M76R)
Misty S. Fairbanks Messick (ASB-1813-T71F)
  *Assistant Attorneys General*

OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Jim.Davis@AlabamaAG.gov
Richard.Mink@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov

*Counsel for the State Defendants*

25