**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **SHEILA McNEIL,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **2:26-cv-00411** |
| | ) | |
| **KAY IVEY, in her official capacity as** | ) | |
| **Governor of the State of Alabama;** | ) | |
| **STEVE MARSHALL, in his official** | ) | |
| **capacity as Attorney General of the** | ) | |
| **State of Alabama,** | ) | |
| **Defendants.** | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

**COMES NOW Plaintiff Sheila McNeil**, by and through her undersigned counsel, and respectfully requests that this Court deny Defendants' pending Motion to Dismiss (Doc. 24). In support of this request, Plaintiff asserts the following:

## STANDARD OF REVIEW

In evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.,* 693 F.3d 1317, 1321–22 (11th Cir. 2012). And, in order to survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).

A properly pleaded complaint can overcome a Rule 12(b)(6) motion when it gives the defendant "fair notice" of the claim and the grounds upon which it rests, and when the complaint's factual allegations, taken as true, state a "plausible" claim for relief. See *Coleman v. Maryland Court of Appeals*, 626 F.3d at 190; see also *Twombly*, 550 U.S. at 555, 570. Even though the factual allegations must also support a reasonable inference that defendants are liable for the alleged violations, "detailed factual allegations" are not required at this stage. *Nemet Chevrolet, Ltd.*, 591 F.3d at 256 (citing *Iqbal*, 556 U.S. at 678). Plaintiffs need not plead facts constituting a prima facie case to survive a motion to dismiss. *Coleman*, 626 F.3d at 190 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15 (2002)). The complaint's factual allegations need only "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

An attack on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) may be either a facial or a factual attack. *Kennedy v. Beachside Commer. Props., LLC*, 731 Fed. Appx. 817, 821 (11th Cir. 2018). A factual attack, such as one made here by Defendants, challenges the existence of subject matter jurisdiction by using material

extrinsic from the pleadings, including factual information provided by the parties in court filings. *Id.* The Court should only rely on Rule 12(b)(1), however, if the facts necessary to sustain jurisdiction do not implicate the merits of plaintiff's cause of action. *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003). If the jurisdictional challenge does implicate the merits, the proper course of action is for the Court to find that jurisdiction does exist and deal with the argument as a direct attack on the merits. *Georgia Ass'n of Latino Elected Offs., Inc. v. Gwinnett Cnty. Bd. Of Registration & Elections*, 36 F.4th 1100, 1113 (11th Cir. 2022).

## ARGUMENT

### Unclear Whether the 2026 PSC Elections Are for Statewide or District Office

To the extent that the State concedes that the Public Service Commission elections occurring in November 2026 under HB 475 (the Act) are for statewide office, Plaintiff is happy to concede the portions of her complaint that hinge on the 2026-elected offices being elected only to represent a certain district, so long as the Court would order a declarative judgment to that effect. However, HB 475 as enacted is not as clear as Defendants claim regarding the geographic representation of the November 2026 elected offices.

Codified as Ala. Code § 37-1-3(b)(1), the Act states that "[b]eginning after the effective date of this act as further provided in this subsection, the membership of the commission shall be expanded so that each commissioner shall represent and

serve, and be elected by the qualified voters of, a geographical district that shall be identical to a corresponding congressional district, as fixed and established for the 2024 congressional elections." The effective date of the Act was June 1, 2026. Ala. Code § 37-1-3 History, Acts 2026, No. 26-345, § 2. By this language, each commissioner elected after June 1, 2026, which includes Plaintiff, is to represent a geographical district rather than representing the entire state. At the very least, the Act is ill-drafted, confusing, and contradictory. Furthermore, if the commissioners elected in 2026 *are* truly elected statewide, the Act becomes a Constitutional issue of a different kind.

**HB 475 Creates New Issues Regarding 2026 Statewide Elected Offices**

The Fourteenth Amendment of the United States provides for the equal protection of the laws, a fundamental principal of which is "equal representation for equal numbers of people, without regard to race, sex, economic status, or place of residence within a State." *Reynolds v. Sims*, 377 U.S. 533, 560-61 (1964). These protections extend to state and local governments as well, "however manifested, whether exercised directly or through subdivisions of the State." *Avery v. Midland County*, 390 U.S. 474, 479 (1968). The one-person, one-vote principle is clearly violated when, as here would occur under the Act's gradual phase-in of district representation, certain areas of the State are represented and others unrepresented on a statewide Board or Commission (such as the Public Service Commission).

**Anderson-Burdick Framework Applies**

In voting rights and election law, "the rights of voters and the rights of candidates to not lend themselves to neat separation." *Bullock v. Carter*, 405 U.S. 134, 143 (1972). "[L]aws that affect candidates always have at least some theoretical, correlative effect on voters," and [i]n approaching candidate restrictions, it is essential to examine in a realistic light the extent and nature of their impact on voters." *Id.* Where a law regarding voting or elections "has a real and appreciable impact on the exercise of the franchise," that law should be "closely scrutinized." *See id.*at 144.

Citing *Bullock* and a number of other elections cases throughout its opinion, the *Anderson* Court noted that even small changes to elections "may have a substantial impact on independent-minded voters." *Anderson v. Celebrezze*, 460 U.S. 780, 790 (1983). So it is here. The primary election for which Plaintiff qualified was undergoing at the time that the Act was enacted; some voters had already cast ballots for their choice of Public Service Commissioner candidate, for an office that they at the time understood to require a term of four years. While this election process was ongoing, the legislature and Defendant Ivey saw fit to throw these voters' expectations to the wind and make a meaningful and substantive change to the requirements of the office. For both candidates and voters, an unexpected, mid-election shift in what is required to fill an elected office can wreak havoc on the

election and on the carrying-out of the office's work. Under Defendants' interpretation, there would be nothing wrong with the legislature deciding, after citizens have already begun casting votes, that an office termed for six years be changed to four, or to one, or to twenty. Candidates are entitled to know the requirements of the office that they are seeking, and voters are entitled to know the requirements of the office for which they are voting on a candidate to fulfill. Enaction of the Act has frustrated and inhibited the electoral process, for Plaintiff both in her status as a candidate and in her status as a voter.

**Plaintiff Has Standing and Plaintiff's Due Process Claims are Valid**

"An unlawful election rule can injure a candidate in several ways. It might cause [her] to lose the election. It might require [her] to expend additional resources. Or it might decrease [her] vote share and damage [her] reputation." *Bost v. ill. State Bd. of Elections*, 607 U.S. 71, 77 (2026). Additionally, "winning, and doing so as inexpensively and decisively as possible, are not a candidate's only interests in an election…candidates also have an interest in a fair process." *Id.* "Premising standing on a candidate's risk of election loss or failure to achieve a certain vote threshold could channel many election disputes to shortly before election day—or worse, after. Only then will many candidates be able to predict with any certainty that a rule will be outcome determinative. And only then will they be able to produce the 'manner and degree of evidence required,' particularly at later 'stages of the litigation,' to

establish standing." *Id.* at 80 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

To the extent that the Act is unclear regarding whether the commissioners elected in November 2026 are to represent particular districts within the State, the particularized harm done to Plaintiff is clearly pled. (Doc. 21 at 17-21, ¶¶ 28-32). Plaintiff has already made significant expenses with the understanding that she is running a statewide race; these expenses are for naught and unrecoverable if mid-stream she is now running for a single-district seat. To the extent that the Act indicates that the commissioners elected in November 2026 are elected statewide and will be representing the state as a whole, Plaintiff remains able to assert particularized harm, both as a candidate and as a voter. The imposition of a six-year term when Plaintiff has launched and maintained her candidacy seeking a four-year term creates not only future practical harm in the form of additional costs she would incur over the additional two years if elected, but real potential electoral harm. The imposition of a longer term brings with it additional questions regarding any candidate's fitness for office, and voters are likely to view any older candidate with more significant scrutiny. Plaintiff, who is in her 60s, may receive a significant electoral demerit if voters are asked to elect her to a 6-year term rather than a 4-year term. Meanwhile, as a voter, Plaintiff is likewise entitled to know the requirements for the office for which she is voting for.

Defendants cite to *King v. Campbell* to assert that Plaintiff lacks the ability to maintain this action because "a public office that is a creature of the legislature confers no vested right." *King v. Campbell*, 988 So. 2d 969, 979 (Ala. 2007). *King* is distinguishable. The question in *King* was whether a particular candidate was entitled to appear on a ballot for the office in question after the legislature amended the office to be an appointed position instead. *Id.* at 973. The court found no such entitlement, as Defendants note. However, the issue in this case is not the elimination of an office or the elimination of an entire election to that office; the issue at hand is the question of whether A: the rules regarding the election were properly changed and B: the new rules regarding the election violate Plaintiff's rights.

**The Governor Is a Proper Defendant**

The Governor is a proper defendant in this action, because separation of powers under the Alabama Constitution requires that the Governor not impose upon the powers of the legislature, which the Act purportedly allows the Governor to do.

The Alabama Constitution "expressly adopts the doctrine of separation of powers" in Ala. Const. 2022, § 42. *See McInnish v. Riley*, 925 So. 2d 174, 178 (Ala. 2005) (citing to the 1901 Constitution's version of the same section). "To the end that the government of the State of Alabama may be a government of laws and not of individuals, and except as expressly directed or permitted in this constitution…the executive branch may not exercise the legislative or judicial power…." Ala. Const.

2022, § 42(c). It has been "well established" that rate making by the public service corporation is a legislative act. *Birmingham v. Southern Bell Tel. & Tel. Co.*, 234 Ala. 526, 530 (Ala. 1937). *See also Alabama Water Co. v. Attalla*, 211 Ala. 301, 306 (1924) ("the power of a reasonable regulation and to fix reasonable rates of public utilities falls within the exercise of the police power; a power lodged with the legislative department….").

As with zoning, another instance of the legislature's police power (albeit on the municipal level), "[w]hile it is clear that certain functions in the execution of [the power] can and must be entrusted to administrative boards or officers, it is equally clear that the power…as such, involves legislative functions which cannot be so delegated under constitutional principles of separation of governmental powers." *Fleetwood Dev. Corp. v. Vestavia Hills*, 282 Ala. 439, 442 (1968). Alabama courts have been protective of rate-making in particular as an legislative power. COMMENTARY: The Usurpation of Legislative Power by the Alabama Judiciary: From Legislative Apportionment to School Reform, 50 Ala. L. Rev. 929, 944-45 (1999). The Alabama Supreme Court has previously concluded that a bill granting the Governor power over utility rates set by the Public Service Commission was unconstitutional, because "the power to fix utility rates 'lies with the legislature…or…in its duly constituted agency, such as the Public Service Commission,'" and "the governor 'cannot be an agency of the Legislature under the

separation of powers provisions of our Constitution.'" *Ex parte Jackson Hosp. & Clinic, Inc.*, 415 So. 3d 9, 23 (Ala. 2024) (quoting *Opinion of the Justices No. 238*, 345 So. 2d 1354, 1355-56 (Ala. 1977)). The bill also violated another section of the Alabama Constitution, since the PSC's rates have the "force of law" and the power to change those rates is "the power to suspend law," residing solely in the legislature. *Id.* at 23 (citing *Opinion of the Justices No. 238* at 1357 and Ala. Const. 2022 § 21).

The Act impermissibly delegates legislative power to the executive branch by permitting the Governor to appoint an unelected official, the "Secretary of Energy" or "Energy Czar," to "direct the activities of the commission and…set the agendas for all meetings of the commissioners…" with "authority over personnel and administrative functions of the commission" and the responsibility to "employ pforessional and administrative employees…as are necessary or expedient to carry out the duties conferred by law upon the commission." The Act at Lines 158-179.

Even if the legislature could delegate the act of rate-making to the executive branch, the delegation would need "reasonably clear standards governing the execution and administration." *State ex rel. King v. Morton*, 955 So. 2d 1012, 1018 (Ala. 2006) (quoting *Monroe v. Harco, Inc.*, 762 So. 2d 828, 831 (Ala. 2000)). The Act contains no such standards, much less "reasonably clear" ones.

The Governor of Alabama is thus a viable and necessary Defendant in this action, to be enjoined from usurping the power of the legislative branch.

## CONCLUSION

WHEREFORE, the above premises considered, Plaintiff requests that this Court deny the pending Motion to Dismiss.

Respectfully submitted on this 25th of August, 2026,

*/s/Richard A. Rice*
Richard Allan Rice
ASB8387I66R
*/s/Spencer E. Bowley*
Spencer E. Bowley
ASB9281Y44Q
**THE RICE LAW FIRM LLC**
115 Richard Arrington Jr. Blvd. North
Birmingham, AL 35203
rrice@rice-lawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2026, a copy of the foregoing document was served upon all counsel of record via electronic filing.

Steve Marshall
Attorney General
James W. Davis (ASB-4063-I58J)
Richard D. Mink (ASB-4802-M76R)
Misty S. Fairbanks Messick (ASB-1813-T71F)
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Jim.Davis@AlabamaAG.gov
Richard.Mink@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov

*/s/Spencer E. Bowley*
Spencer E. Bowley