**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **SHEILA McNEIL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.:** |
| | ) | **2:26-cv-00411-BL-KFP** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **KAY IVEY, in her official capacity as Governor of the State of Alabama; STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION, MOTION TO CERTIFY QUESTION TO THE SUPREME COURT OF ALABAMA, AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Sheila McNeil moves under Federal Rule of Civil Procedure 65 for a preliminary injunction preserving the existing structure of the Alabama Public Service Commission ("PSC") pending final judgment. Consistent with the Court's Initial Order, Plaintiff presents this request as a separate motion rather than relying solely on the requests for preliminary relief stated in her original Complaint and Amended Complaint. Initial Order (Doc. 6) at 11.

Specifically, Plaintiff requests an order enjoining Defendant Governor Kay Ivey, together with her officers, agents, servants, employees, and persons acting in active concert or participation with her, from taking further action to implement the structural provisions of Alabama Act No. 2026-345 by:

1. Giving effect to the four gubernatorial appointments to the PSC scheduled to begin their terms on January 18, 2027;
2. Directing or authorizing those appointees to assume office before final judgment;
3. Appointing or installing the Secretary of Energy scheduled to assume authority over the PSC beginning January 19, 2027; and
4. Otherwise implementing the Act's transition from the existing three-member PSC to the new seven-member structure before final judgment.

This requested injunction would not alter the ballot, change voter qualifications, prevent the November 2026 statewide election for PSC Place 2, or disturb votes already cast. It would preserve the existing PSC structure until the Court adjudicates Plaintiff's constitutional claims.

## I. INTRODUCTION

Plaintiff qualified in January 2026 as a candidate for PSC Place 2, paid the required qualifying fee, announced her candidacy, registered her principal campaign committee, and began campaigning statewide under the structure then governing that office. Doc. 21, Amended Complaint at ¶¶ 1, 9. She is also an Alabama citizen and registered voter whose campaign addresses utility rates, regulatory accountability, and the effect of PSC decisions on Alabama families. McNeil Decl. ¶¶ 1–3.

After Plaintiff entered the race, the Legislature enacted Act No. 2026-345. The Act expands the PSC from three commissioners to seven, provides for four gubernatorial appointees whose terms begin January 18, 2027, and creates a Governor-appointed Secretary of Energy who will direct PSC activities, set meeting agendas, and exercise authority over personnel and administrative functions beginning January 19, 2027. Doc. 21, Amended Complaint at ¶¶ 1–4; Doc. 23, State's Motion to Dismiss at 3–4. Alabama law now establishes a seven-member PSC and provides for a Secretary of Energy appointed by and serving at the pleasure of the Governor. Ala. Code §§ 37-1-1, -12 (2026).

One troublesome issue within the new law is that it can be read in such a way as to find that even the commissioners elected in the election this November are to represent a certain congressional district rather than the state as a whole. Doc. 21, Amended Complaint at ¶ 27a; Ala. Code § 37-1-3(b)(1). Alabama Rule of Appellate

Procedure 18 allows a federal court to certify a question to the Supreme Court of Alabama when a question of state law is "determinative of said cause" and there is no clear controlling precedent. Plaintiff has argued in her response to the Defendants' Motion to Dismiss that the threatened change to representation-by-congressional-district violates her constitutional rights as a voter and as a candidate. Because this involves newly passed legislation, there is no controlling Supreme Court of Alabama precedent that determines which interpretation of the law is correct. Plaintiff therefore moves that this Court certify to the Supreme Court of Alabama the following question:

> Does the enactment of Alabama Act No. 2026-345 change the constituency of the Alabama Public Service Commission offices being filled via election in November 2026 from a statewide constituency to a constituency of a single congressional district, and if so, which congressional district will be represented by the winner of the election to fill the office formerly known as "Place 2?"

Plaintiff also has acted diligently throughout this litigation. She expressly requested preliminary injunctive relief in both her original Complaint and her Amended Complaint, thereby placing the Court and Defendants on notice from the outset that she intended to seek preservation of the status quo. Doc. 1, Complaint at ¶¶ 55–58; Doc. 21, Amended Complaint at ¶¶ 57–61. Plaintiff initially refrained from filing a separate Rule 65 motion while Defendants' motions to dismiss were pending so that the Court could first address the threshold jurisdictional and pleading

issues raised by Defendants. But the election is now less than thirty days away, and further delay risks allowing the impending election and post-election transition to overtake meaningful judicial review. Plaintiff therefore renews and formalizes her previously pleaded request for preliminary relief through this motion.

## II. STATEMENT OF FACTS

The Alabama Democratic Party's qualifying period ran from January 5 through January 23, 2026. Plaintiff paid her qualifying fee on January 20, publicly announced her candidacy on January 22, and received confirmation of her principal campaign committee's registration on January 23. Doc. 21, Amended Complaint at ¶ 9. Her declaration confirms that she is an Alabama citizen, registered voter, and candidate for PSC Place 2 in the 2026 general election. McNeil Decl. ¶¶ 1–2.

Plaintiff then conducted an active statewide campaign, traveling to and campaigning in at least fourteen Alabama counties between February 3 and April 30, 2026, while undertaking public outreach, fundraising, and advocacy directed to Alabama utility ratepayers. Doc. 21, Amended Complaint at ¶ 9. She undertook those activities in reliance on the structure, authority, and governing rules of the office as they existed when she qualified. Id.

The legislation that became Act No. 2026-345 was signed after Plaintiff had entered the race and begun campaigning. Doc. 21, Amended Complaint at ¶¶ 1–2. As enacted, the Act expands the PSC, creates a phased transition involving gubernatorial appointments and district-based elections, extends the term associated with the 2026 election, and creates the Secretary of Energy position. Id. at ¶¶ 3–4.

The Governor has appointed four individuals to initial PSC terms beginning in January 2027, but those appointees have not yet assumed office. Doc. 23, State's Motion to Dismiss at 20. The transition therefore remains incomplete, and prospective relief can preserve the existing PSC structure before the new commissioners' terms and the Secretary of Energy's authority begin.

The Amended Complaint alleges that the mid-campaign restructuring burdens Plaintiff's candidacy, changes the institutional authority of the office, and impairs the interests of voters supporting her candidacy. Doc. 21, Amended Complaint at ¶¶ 33–40. Plaintiff's declaration states that preserving the existing PSC structure through the 2026 election and preventing implementation of the appointment structure are necessary to protect her constitutional rights and the rights of Alabama voters. McNeil Decl. ¶ 32.

## III. LEGAL STANDARD

A preliminary injunction may issue when the movant clearly establishes:

1. A substantial likelihood of success on the merits;
2. A likelihood of irreparable injury unless an injunction issues;
3. That the threatened injury outweighs the damage the proposed injunction may cause the opposing party; and
4. That the injunction would not be adverse to the public interest.

*Gonzalez v. Governor of Georgia*, 978 F.3d 1266, 1270-71 (11th Cir. 2020). The Eleventh Circuit requires the moving party to establish each of these four elements, and the absence of a substantial likelihood of success precludes preliminary relief. *USF Fed. Credit Union v. Gateway Radiology Consultants, P.A. (In re Gateway Radiology Consultants, P.A.)*, 983 F.3d 1239, 1254-55 (11th Cir. 2020). A preliminary injunction is an extraordinary remedy, and the movant bears the burden of clearly establishing all four requirements. *Wreal, LLC v. Amazon.com*, 840 F.3d 1244, 1247 (11th Cir. 2016). The Supreme Court likewise requires a clear showing of likely success, likely irreparable harm absent relief, equities favoring the movant, and consistency with the public interest. *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345-46 (2024).

The threatened injury must be actual and imminent rather than remote or speculative. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Although

unexplained delay of even a few months may weigh against irreparable harm, delay is not necessarily fatal, and the relevant inquiry remains whether the circumstances demonstrate a need for prompt action before the case can be resolved on the merits. *Wreal*, 840 F.3d at 1247.

## IV. ARGUMENT

### A. Plaintiff Has a Substantial Likelihood of Success on Her Equal-Protection Claim.

The First and Fourteenth Amendments protect the rights of individuals to associate for political purposes and of qualified voters to cast their votes effectively through candidates who reflect their policy preferences. *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983). Although States necessarily regulate elections, the governing framework weighs the character and magnitude of the asserted constitutional injury against the State's justifications and considers the extent to which those justifications require the burden imposed. *Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1230-31 (11th Cir. 2025).

The scrutiny applied follows a sliding scale. A severe burden must be narrowly drawn to serve a compelling state interest, while a slight burden may be sustained by sufficiently weighty legitimate interests. *Id.* That inquiry requires a

case-specific evaluation of the asserted burden and supporting evidence rather than an automatic rule. *Stein v. Ala. Sec'y of State*, 774 F.3d 689, 696 (11th Cir. 2014).

Plaintiff alleges more than dissatisfaction with a change in public policy. She qualified and incurred concrete campaign obligations for a particular statewide office before the Act transformed the commission from three members to seven, added four appointed commissioners, extended the relevant term, and transferred substantial administrative authority to a Governor-appointed Secretary of Energy. Doc. 21, Amended Complaint at ¶¶ 33–36. Her candidacy was organized around the authority and accountability of the statewide elected office as it existed when she entered the race. Id. ¶¶ 28–31.

The State argues that no cognizable electoral burden exists because the 2026 Place 2 election remains statewide. Doc. 23, State's Motion to Dismiss at 5–8. But Plaintiff's present request does not depend on an assertion that her name will appear on a district ballot in November. Her claim concerns the relationship between the election and the governmental authority the election will confer. Voters may cast statewide ballots for Place 2,[1] but the office filled through that election will operate within a materially different commission alongside four appointed commissioners

[1] Plaintiff maintains, *supra*, that the law as enacted is unclear on this point.

and under a newly created executive administrator. Doc. 21, Amended Complaint at ¶¶ 35–47.

Those allegations identify a present burden on Plaintiff's political association and campaign. She must campaign for votes based on an office whose authority and governing structure are scheduled to change after voting ends. Her campaign expenditures, public representations, and statewide organization were undertaken before those changes. Doc. 21, Amended Complaint at ¶¶ 51–54. Because the restructuring was enacted after candidate qualification and is scheduled to take effect immediately after the election, Plaintiff has shown a substantial likelihood that the burden warrants meaningful review under the governing sliding-scale framework.

The requested injunction is tailored to that claim. It does not permanently prevent Alabama from restructuring the PSC. It maintains the existing structure only until the Court determines whether applying the Act's structural provisions to an election cycle already underway comports with the Constitution.

B. Plaintiff Faces Actual and Imminent Irreparable Harm and Has Acted Diligently in Seeking Relief.

The relevant harm is neither remote nor speculative. The four appointed commissioners' terms are scheduled to begin January 18, 2027, and the Secretary of

Energy position becomes operative on January 19, 2027. Doc. 23, State's Motion to Dismiss at 3–4. Once the new commissioners assume office and the Secretary begins exercising authority over PSC activities, agendas, personnel, and administration, preservation of the existing structure will no longer be possible without displacing sitting officials and disrupting an operating agency.

Plaintiff is suffering a present electoral injury as well. She is campaigning statewide for an office that the State plans to place within a substantially different governing structure after the election. The Amended Complaint alleges that this change has affected the nature of the office, Plaintiff's campaign, and the expectations under which she organized and invested resources. Doc. 21, Amended Complaint at ¶¶ 32, 35–36. Those injuries cannot be repaired through damages after the election.

Plaintiff's timing does not reflect an unexplained lack of urgency. The Eleventh Circuit has explained that delay weighs against preliminary relief when it is unexplained and inconsistent with the asserted need for speedy action. *Wreal*, 840 F.3d at 1248. Here, the record supplies both an explanation and a continuous course of diligent action.

Plaintiff filed this action on May 25, 2026, and expressly requested a temporary restraining order and preliminary injunction in the original Complaint.

Doc. 1, Complaint at ¶¶ 55–58. She thereafter filed the operative Amended Complaint on July 21, 2026, again alleging immediate and irreparable harm, addressing each preliminary-injunction factor, and requesting expedited preliminary relief. Doc. 21, Amended Complaint at ¶¶ 57–61. Her sworn declaration likewise states that it was submitted in support of a motion for temporary restraining order and preliminary injunction. McNeil Decl. ¶ 1. Thus, neither the Court nor Defendants could reasonably have understood Plaintiff to have abandoned or deferred indefinitely her request for preliminary relief.

Plaintiff initially refrained from filing a separate motion because Defendants had moved to dismiss the action and raised threshold questions concerning jurisdiction, standing, immunity, mootness, and the legal sufficiency of Plaintiff's claims. Doc. 11, State's Motion to Dismiss; Doc. 23, State's Motion to Dismiss. Plaintiff sought to permit the Court to address those threshold issues before requiring separate, potentially overlapping Rule 65 proceedings. That approach was consistent with the State's own position that threshold legal challenges should be resolved before further litigation burdens were imposed. Doc. 12, State's Unopposed Motion to Stay Planning Conference.

The procedural posture therefore explains the timing of this separate motion; it does not undermine the urgency of Plaintiff's requested relief. A court evaluating

similar timing arguments has recognized that the procedural posture may explain why a plaintiff files a preliminary-injunction motion after resolution or briefing of a motion to dismiss rather than simultaneously with the complaint. *VoteAmerica v. Raffensperger*, 609 F. Supp. 3d 1341, 1368-69 (N.D. Ga. 2022). Here, Plaintiff consistently pleaded her demand for preliminary relief while awaiting consideration of Defendants' dispositive challenges.

The circumstances have now materially narrowed the available time for effective relief. The election is less than thirty days away, while the challenged post-election transition is scheduled to begin in January 2027. Plaintiff therefore renews and formalizes through this motion the request she first made when this action commenced and repeated in the Amended Complaint. Filing now permits focused adjudication before the election and before the challenged structural transition becomes operational.

This timing also complies with the Court's Initial Order, which requires any request for a temporary restraining order or preliminary injunction to be presented by separate motion even when the complaint requests that relief. Doc. 6, Initial Order at 11. Plaintiff's compliance with that procedural requirement should not obscure that the substance and urgency of her request have been before the Court since the filing of the original Complaint.

Finally, the requested relief remains prospective. Although the Governor has selected four appointees, they have not assumed office, and their terms do not begin until January 2027. Doc. 23, State's Motion to Dismiss at 20. The Court can therefore prevent the impending injury without attempting to undo completed service or past official acts.

### C. The Balance of Equities Favors Maintaining the Existing Structure Temporarily.

In deciding whether equitable relief is appropriate, a court balances the competing claims of injury and considers the effect on each party of granting or withholding relief. *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 542 (1987). The balance favors a limited injunction maintaining the present PSC structure while the Court resolves the merits.

Without relief, Plaintiff must complete the election while facing the imminent restructuring of the office she seeks, and the new PSC structure may take effect before final adjudication. With relief, the State experiences only a temporary delay in implementing the structural transition. The injunction would not prevent the PSC from continuing its existing operations, invalidate the Act permanently, or interfere with the November 2026 ballot.

The requested injunction is narrower than the relief described in the Amended Complaint. Because the Governor has already selected the four appointees and because the 2026 election remains statewide, Plaintiff does not ask the Court to unwind the selections or modify the ballot. She asks only that the new appointees and Secretary not assume statutory authority before the Court decides whether applying the restructuring to the current election cycle is constitutional.

D. The Requested Injunction Serves the Public Interest and Avoids the Concerns Identified in Purcell.

The Court must give serious and independent consideration to the public-interest factor. *Winter v. NRDC, Inc.*, 555 U.S. 7, 26-27 (2008). Under the Purcell principle, courts considering election-related relief must account for considerations specific to elections, including the possibility that judicial orders affecting elections may cause voter confusion, a risk that increases as an election approaches. *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006). Purcell does not resolve the ultimate merits of an election challenge and does not establish a bright-line rule applicable without regard to the facts and requested relief. *Purcell*, 549 U.S. at 5; *VoteAmerica*, 609 F. Supp. at 1368.

The operative question is what the requested injunction would require election administrators, candidates, and voters to do differently. The Supreme Court has

repeatedly cautioned against judicial alteration of election rules on the eve of an election. *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 589 U.S. 423, 424 (2020). The Eleventh Circuit applied that concern where relief entered less than four months before voting implicated voter registration already underway and required immediate administrative action, including retraining poll workers. *League of Women Voters of Fla., Inc. v. Fla. Sec'y of State*, 32 F.4th 1363, 1371 (11th Cir. 2022). The Supreme Court recently reiterated the same concern where an order would have displaced Alabama's chosen congressional maps for imminent elections. *Allen v. Milligan*, 146 S. Ct. 1377, 1381 (2026).

Those concerns favor the limited relief requested here. This motion does not ask the Court to change the November ballot, alter voter qualifications or registration, retrain poll workers, redraw electoral boundaries, modify ballot-receipt or counting deadlines, or prevent the statewide Place 2 election. Alabama law continues to provide for two commissioners to be elected statewide in November 2026. Ala. Code § 37-1-3 (2026). The requested injunction therefore leaves the election machinery and the rules governing the casting and counting of votes untouched. It addresses only whether four appointed commissioners and a new Secretary of Energy may assume authority in January 2027, after the election.

The State will likely respond that Purcell must be applied broadly because even a seemingly modest injunction may produce unanticipated administrative consequences. The Eleventh Circuit has recognized that concern when an injunction entered near an election required active changes to election administration. *League of Women Voters*, 32 F.4th at 1371. But the requested order here would impose no new duty on election officials, require no new instruction to voters, and create no competing rule for casting, receiving, or counting ballots.

The State itself argues that Plaintiff's remaining objections concern governance rather than election mechanics. Doc. 23, State's Motion to Dismiss at 8. That characterization defeats any contention that the requested injunction would disrupt the mechanics of the approaching election. Plaintiff asks the Court to permit the election to proceed under the rules the State acknowledges remain applicable while temporarily preserving the current PSC structure after that election.

Nor does Plaintiff invoke Purcell as an affirmative command that the Court undo the Legislature's enactment merely because it occurred during an election cycle. Purcell instead informs the tailoring and public-interest inquiry. The requested relief avoids judicially created electoral confusion while preventing the challenged post-election transition from becoming an accomplished structural change before the merits can be adjudicated.

Maintaining the current PSC structure pending adjudication also promotes orderly administration. It avoids seating four additional commissioners and installing a new executive official only to confront the possibility that the challenged transition cannot constitutionally be applied to the 2026 election cycle. Preserving the existing structure provides continuity while allowing the November election to proceed under the statewide rules the State acknowledges remain in force.

E. The Injunction Should Run Against the Governor Only to the Extent of Her Prospective Implementation Authority.

A state official may be subject to prospective injunctive relief when the official's office carries responsibility to enforce or implement the challenged law. *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). A generalized obligation to enforce state law is insufficient; the official must have a connection to enforcement of the particular challenged enactment. *Ex parte Young*, 209 U.S. 123, 157 (1908).

The Act assigns the Governor specific responsibilities concerning the four appointed commissioners and the Secretary of Energy. Doc. 21, Amended Complaint at ¶ 10. The Governor has exercised the appointment authority for the four commissioners, whose terms begin in January 2027, and retains authority concerning the appointment of the Secretary of Energy. Doc. 23, State's Motion to

Dismiss at 20. The requested injunction is therefore limited to prospective actions within that implementation authority.

Plaintiff does not presently seek preliminary relief against the Attorney General based merely on his general role as Alabama's chief legal officer. Limiting the injunction in this manner addresses the State's enforcement-connection objection while preserving effective prospective relief against the official assigned direct implementation responsibilities.

## V. CONCLUSION AND PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court enter a preliminary injunction:

1. Enjoining Governor Kay Ivey, in her official capacity, and her officers, agents, servants, employees, and persons acting in active concert or participation with her who receive actual notice of the injunction, from giving effect to the four gubernatorial PSC appointments scheduled to begin on January 18, 2027, pending final judgment;
2. Enjoining Governor Ivey from appointing or installing a Secretary of Energy under Alabama Act No. 2026-345 pending final judgment;

3. Enjoining Governor Ivey from taking further action within her statutory authority to implement the transition from the existing three-member PSC to the seven-member structure pending final judgment;
4. Directing that nothing in the injunction shall alter the ballot or administration of the November 2026 statewide election for PSC Place 2; and
5. Granting such further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Richard A. Rice*
**RICHARD A. RICE**
*/s/ Spencer E. Bowley*
**SPENCER E. BOWLEY**

**THE RICE FIRM, LLC**
115 Richard Arrington Jr. Blvd. N.
Birmingham, AL 35203
P: 205.618.8733 F: 205.391.7193
E: rrice@rice-lawfirm.com

Attorneys for Plaintiff Sheila McNeil

## CERTIFICATE OF SERVICE

I certify that on this 9th day of October, 2026, I filed the foregoing Plaintiff's Motion for Preliminary Injunction and Incorporated Memorandum of Law through the Court's CM/ECF system, which will provide notice to all counsel of record as listed below.

*/s/ Spencer E. Bowley*
**SPENCER E. BOWLEY**