**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **SHEILA McNEIL,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**KAY IVEY, in her official capacity as Governor of the State of Alabama; STEVE MARSHALL, in his official capacity as Attorney General of the State of Alabama,**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Civil Action No. 2:26-cv-00411** |

**DECLARATION OF SHEILA McNEIL IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

*(Submitted Pursuant to 28 U.S.C. § 1746)*

I, Sheila McNeil, declare as follows under penalty of perjury pursuant to 28 U.S.C. § 1746:

**Introduction And Qualifications**

1. I am the Plaintiff in this action. I am a candidate for the Alabama Public Service Commission ("PSC"), Place 2, in the 2026 general election. I submit this Declaration in support of Plaintiff's Motion for a Temporary Restraining Order and

Preliminary Injunction. I have personal knowledge of all facts stated herein and, if called as a witness, could and would competently testify thereto.

2. I am a citizen and registered voter of the State of Alabama. I have been actively engaged in public service, utility policy advocacy, and civic leadership in Alabama. Throughout my campaign, I have focused on the impact of utility rates on Alabama families, the accountability of investor-owned utilities regulated by the PSC, and the need for independent, democratically accountable utility regulation.

3. I am familiar with the structure and operations of the Alabama Public Service Commission, the investor-owned utilities it regulates including Alabama Power Company and the significant impact those utilities have on millions of Alabama ratepayers, particularly lower-income households and rural communities.

**My Candidacy: Qualifying, Filing, And Early Campaign Activities**

4. The Alabama Democratic Party's qualifying period for the 2026 election cycle was January 5 through January 23, 2026. I participated in that qualifying period and undertook the following specific steps to formally enter the race for PSC Commissioner, Place 2:

a. January 20, 2026: I paid my qualifying fee to the Alabama Democratic Party.

b. January 22, 2026: I traveled to Montgomery, Alabama, and held a press conference at the Alabama Democratic Party Office, publicly announcing my

candidacy for the Alabama Public Service Commission, Place 2, as a statewide, at-large office.

c. January 23, 2026: I received confirmation of the registration of my Principal Campaign Committee, formally establishing my campaign's legal and financial structure.

5. Each of these acts was undertaken in direct reliance on Alabama law as it then existed: specifically, that PSC Commissioner, Place 2, was a statewide at-large office, that the commissioner would serve a four-year term, and that the elected commission would exercise independent authority over public utility regulation in Alabama.

6. Beginning in February 2026, I began observing widespread public concern about exceptionally high Alabama Power utility bills, reflected in constituent communications and significant activity on social media platforms, including the Facebook pages "Alabama Power Corruption" and "Energy Alabama." This confirmed to me that the issue of utility accountability, the central issue of my campaign was of urgent and immediate importance to Alabama families.

**Statewide Campaign Activities Conducted In Reliance On Existing Law**

7. Between February 3 and April 30, 2026, I traveled to and conducted campaign activities in at least fourteen Alabama counties: Clay, DeKalb, Jefferson, Lee (via

Zoom), Blount, Cleburne, Cullman (specifically Hanceville), Jackson, Madison, Marshall, Montgomery (twice - once in person and once via Zoom), Shelby, Talladega, and Tallapoosa Counties.

8. In each county, I engaged directly with voters, local officials, community leaders, and ratepayer advocates regarding utility accountability, rate transparency, and the importance of an independent, democratically accountable PSC. All of this organizing was premised on the at-large, statewide nature of the race I was conducting.

9. Throughout this period, I also built a campaign fundraising infrastructure, retained campaign staff and consultants, made public commitments to voters and donors about the nature of my campaign, and developed a platform and policy agenda tailored to the statewide electorate that elects PSC commissioners. These investments were made in direct reliance on the structure of the office as it existed when I filed.

10. All of my campaign investments - financial, organizational, and reputational were made in direct reliance on the law as it existed when I entered the race. They cannot be undone or re-deployed without substantial and irreversible cost.

**My Formal Opposition To Each Successive PSC Restructuring Bill**

11. Throughout the 2026 Regular Session, I actively and publicly opposed each legislative vehicle that sought to restructure the PSC in ways I believed were unconstitutional, harmful to ratepayers, and harmful to democratic accountability. My opposition was consistent, documented, and conducted through legitimate public channels.

12. February 11, 2026: I sent a mass email to Alabama legislators formally opposing Senate Bill 268 (SB 268) and House Bill 392 (HB 392). HB 392 proposed to convert the PSC from an elected to an appointed body, with commissioners appointed by the Governor, Speaker, and President Pro Tempore, subject to Senate confirmation. I opposed this bill because it would have removed direct democratic accountability over the commission and transferred that accountability to legislative and executive appointing authorities.

13. March 12, 2026: I issued a press release opposing SB 360 to statewide media, titled "Immediate Press Release: Stop Alabama Senate Bill 360: A Threat to Consumer Voice and Accountability." I opposed SB 360 because it would expand the PSC to seven district seats, create a Governor-appointed Secretary of Energy to control the commission's operations, and implement these changes in the middle of an election cycle in which I was already an active candidate.

14. March 16, 2026: I issued a second press release opposing SB 360 to statewide media, titled "For Immediate Release - SB 360: 'A Power Grab Dressed Up as Reform.'" This press release further detailed my concerns about SB 360's structural provisions and their impact on ratepayer accountability and the integrity of the 2026 election.

15. April 1, 2026: I sent a mass email to Alabama legislators urging them to oppose House Bill 475 in its then-pending form.

16. April 3, 2026: On the same day HB 475 was enacted, I issued a press release to statewide media titled "McNeil Campaign: HB 475 Dismantles Oversight and Hands Utilities a Blank Check," publicly opposing the enacted version of HB 475 and calling attention to its harmful effects on ratepayers and democratic accountability.

17. Notwithstanding my repeated public opposition, HB 475 was enacted on April 3, 2026 in a final form that incorporates the structural provisions of SB 360 that I had formally and publicly opposed. At no point did the Legislature provide candidates already in the field with individualized notice that the office we sought would be fundamentally restructured, or with any meaningful opportunity to be heard before that restructuring took legal effect.

18. I am also aware that the disruption HB 475 has caused to the 2026 PSC election cycle extends beyond my own candidacy. On April 20, 2026, John

Northrop, a Democratic candidate for PSC Place 1, publicly withdrew from the race, expressly citing the enactment of HB 475 as his reason for withdrawal. His withdrawal confirms what I have experienced firsthand: the Act has rendered the election cycle legally and practically untenable for candidates who entered the race under the prior structure. I am further aware that absentee voting in Alabama had already commenced on March 25, 2026, nine days before HB 475 was signed into law meaning that Alabama citizens were actively casting ballots in a PSC election whose fundamental structure was simultaneously being dismantled by the Legislature. The disruption is not theoretical; it is already occurring.

**The Concrete Harms HB 475 Causes To My Candidacy**

19. HB 475 harms my candidacy in the following concrete, specific, and irreparable ways:

20. The At-Large Office No Longer Exists: The office I qualified to seek PSC Commissioner, Place 2, as a statewide at-large position no longer exists under HB 475. The PSC has been restructured into seven district-based seats. My candidacy was organized, funded, and conducted on the basis of a statewide race, not a district-based one.

21. Gubernatorial Appointments Before the Election: HB 475 authorizes the Governor to appoint four commissioners to the newly restructured PSC as early as

July 15, 2026, before voters have had any opportunity to participate in the November 2026 election. This means that a majority of the reconstituted commission will be installed by gubernatorial appointment not democratic election before I or any other 2026 candidate can take office.

22. Diminished Office: If HB 475 stands and I were elected to one of the remaining seats, I would serve on a commission whose agenda is set by a Governor-appointed Secretary of Energy not by the elected commissioners. The office I sought would be materially diminished: elected commissioners would lack the authority to control the commission's own administrative and agenda functions. I filed to seek a position of independent regulatory authority; HB 475 converts that position into one substantially subordinate to the executive branch.

23. Wasted and Non-Transferable Campaign Investment: The statewide organizational infrastructure, fundraising relationships, and campaign platform I built cannot be meaningfully transferred to a district-based or structurally different race without substantial additional cost and disruption. Campaign funds raised for a statewide race were raised under different assumptions than a district-based race. The harm is real, immediate, and cannot be compensated by money damages.

24. Voter Confusion and Disruption: Voters who heard my announcement, attended events, donated to my campaign, and committed to supporting my candidacy for a statewide at-large PSC seat now face a fundamentally different

electoral landscape. The disruption to voter understanding and engagement is significant and will continue to worsen as implementation deadlines approach.

**Harm To Minority Voters**

25. I am aware that HB 475's seven-district structure for PSC elections will closely track Alabama's seven congressional districts, the boundaries of which are currently the subject of active federal litigation under Section 2 of the Voting Rights Act following the Supreme Court's decision in Allen v. Milligan, 599 U.S. 1 (2023).

26. Under the prior at-large system, African-American voters and other minority communities throughout the entire State of Alabama possessed the collective ability to meaningfully influence all PSC commissioner elections. My campaign actively engaged minority communities across Alabama in Jefferson, Madison, Montgomery, and other counties with significant minority populations on the basis that their statewide vote would matter in a statewide at-large race.

27. Under the seven-district structure mandated by HB 475, that collective influence is fractured. African-American voters are substantially concentrated in one or two congressional districts and will have significantly diminished collective influence over the other five or six commissioner seats. The statewide organizing power of minority communities to influence PSC composition which was a direct feature of the at-large system is eliminated by HB 475's district structure.

28. Additionally, the Secretary of Energy, the most powerful administrative position under HB 475, is appointed solely by the Governor from lists submitted by three legislative leaders. There is no geographic representation requirement, no diversity mandate, and no mechanism for minority community participation in that appointment. This insulates the most powerful position in the reformed PSC from minority political accountability entirely.

**Irreparable Harm And The Need For Immediate Relief**

29. The harm I face from HB 475 is immediate, ongoing, and irreparable. Money damages cannot restore the campaign investments I have made, the voter relationships I have built, the credibility I have established, or the statewide at-large office I sought. No amount of post-hoc compensation can undo the restructuring of the PSC or the installation of gubernatorial appointees before the November election.

30. The timeline is urgent. Under HB 475, legislative leaders must submit candidate lists to the Governor by June 1, 2026, less than one month from the date of this Declaration. The Governor must make appointments by July 15, 2026. Each day that passes without judicial relief brings these irreversible milestones closer.

31. The pre-HB 475 PSC was fully functional and capable of serving Alabama ratepayers during the pendency of this litigation. The State loses nothing of significance by maintaining the pre-HB 475 status quo through the November 2026

election. The cost to Plaintiff, to minority voters, and to the integrity of the democratic process of denying relief is, by contrast, total and permanent.

32. A preliminary injunction preserving the status quo maintaining the at-large PSC structure through the 2026 election and enjoining the appointment process is essential to preserve the constitutional rights of Plaintiff, to protect the voting rights of all Alabamians (and minority Alabamians in particular), and to ensure that the regulation of public utilities that affects millions of Alabama families is conducted by a constitutionally legitimate, democratically elected body.

**Statement Under Penalty of Perjury**

Pursuant to 28 U.S.C. § 1746, **I declare** under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my personal knowledge, information, and belief.

Executed on this 25th day of May, 2026,

Signature: ______________________________

Printed Name: Sheila McNeil