**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| SHEILA McNEIL,<br><br>*Plaintiff*,<br><br>*v.*<br><br>HON. KAY IVEY, in her official capacity as Governor of the State of Alabama, *et al.*,<br><br>*Defendants*. | ) | Case No. 2:26-cv-00411-BL-KFP |

**GOVERNOR IVEY'S OPPOSITION TO MCNEIL'S MOTION FOR PRELIMINARY INJUNCTION AND CERTIFICATION OF QUESTIONS** (DOC. 28)

More than two months after filing her amended complaint and more than four months after filing suit, Sheila McNeil, a candidate for Public Service Commission Place 2, has moved to preliminarily enjoin Governor Kay Ivey from taking steps to facilitate legislative action restructuring the PSC. McNeil simultaneously requested the Court certify questions to the Supreme Court of Alabama. This Court should deny McNeil's motion on both fronts.

As to the injunction, McNeil falls well short of establishing that she is entitled to extraordinary relief. She is not likely to prevail on the merits of her Equal Protection claim because *Anderson – Burdick* does not apply. The equities do not favor her, in part because of her delay; indeed, with the General Election occurring

November 3, McNeil's claim is about to be moot. Moreover, McNeil has not identified any actions that the Governor still needs to take as to the PSC Commissioners she has already appointed, thereby highlighting a lack of redressability as to part of the motion.

As to McNeil's request for certification, if she wants the State law questions answered because of the ongoing election, then again mootness is imminent. If McNeil asks because she may win her election, that is currently speculative. And, in any event, McNeil has not demonstrated that her State law questions need to be answered now for this Court to resolve any pending federal claims.

## I. Background

McNeil challenges Ala. Act No. 2026-345, doc. 23-1. The Act expands the PSC from three Commissioners to seven. Doc. 23-1 at 2-3, *ll.* 27–31. Over time, it provides for a transition from statewide elections to districted elections. *Id.* at 3-5 *ll.* 38-107. As a part of this transition, the Governor was required to appoint four new Commissioners who will take office in January. *Id.* at 4, *ll.* 69-72. The Governor appointed: Lieutenant General Ronald Burgess, Jr., USA, retired; Dr. Fred Johnson; Demarcus Joiner; and, Dr. Quinton T. Ross, Jr. Docs. 23-3 through 23-7. The Act also establishes the Secretary of Energy as the administrative head of the PSC beginning in January. *Id.* at 7-8 *ll.* 158-85. The Secretary will be "appointed by and serve at the pleasure of the Governor," *id.* at 7 *ll.* 160-61.

## II. Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). McNeil "must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Id.* at 20. "The first two factors are the most critical." *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020) (internal quotation marks and citation omitted). And, here, the Governor's "interest and harm merge with the public interest." *Id.* at 1091.

## III. Argument

**A. McNeil is not likely to prevail on the merits of her Equal Protection claim.** McNeil relies exclusively on her Equal Protection claim to support her request for preliminary relief. Doc. 28 at 8-10. That claim is based on *Anderson – Burdick*, doc. 28 at 8-9; *see also* doc. 21 at 21-22 ¶ 34, which does not apply because McNeil does not challenge a burden on the right to vote or association.

The *Anderson – Burdick* analysis was developed in a line of cases including *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). It "requires [courts] to weigh the character and magnitude of the asserted First and Fourteenth Amendment injury against the state's proffered justifications for the burdens the state imposes, taking into consideration the extent to which those

justifications require the burden to plaintiffs' rights." *Polelle v. Fla. Sec'y of State*, 131 F.4th 1201, 1230 (11th Cir. 2025) (internal quotation marks and citation omitted). The "analysis follows a sliding scale," rather than "strict tiers," imposing greater scrutiny as the burden on "a plaintiff's speech, association, or voting rights" increases. *Id.* at 1230-31.

Typical cases analyzed under *Anderson – Burdick* involve issues like the burden to a candidate or political organization to get on the ballot. For example, *Anderson* concerned John Anderson's challenge to Ohio's deadline for an independent candidate for President to get on the 1980 ballot, 460 U.S. at 782, and *Storer v. Brown* involved requirements for independent candidates seeking ballot access, 415 U.S. 724, 726-27 (1974). *Williams v. Rhodes* concerned the Ohio American Independent Party and the Socialist Labor Party seeking ballot access, 393 U.S. 23, 24-28 (1968), while *Burdick* concerned "whether Hawaii's prohibition on write-in voting unreasonably infringes upon its citizens' rights under the First and Fourteenth Amendments," 504 U.S. at 430. This case is unlike any of those.

Faced with a challenge to how candidates are listed on a ballot, the Eleventh Circuit reasoned that *Anderson – Burdick* did not apply because the "complaint is … not based on the right to vote *at all*[.]" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1261 (11th Cir. 2020). Chief Judge Pryor explained:

> The statute at issue here is unlike any law that this Court or the Supreme Court has ever evaluated under *Anderson* and *Burdick*. The

> statute does not make it more difficult for individuals to vote, or to choose the candidate of their choice. It does not limit any political party's or candidate's access to the ballot, which would interfere with voters' ability to vote for and support that party or candidate. Nor does it burden the associational rights of political parties by interfering with their ability to freely associate with voters and candidates of their choosing. And to state the obvious, the statute certainly does not create the risk that some votes will go uncounted or be improperly counted. All the statute does is determine the order in which candidates appear in each office block on the ballot.

*Jacobson*, 974 F.3d at 1261-62 (citations omitted).

Likewise, McNeil's claim is very different from the kinds of claims traditionally evaluated under *Anderson – Burdick*. "Her claim concerns the relationship between the election and the governmental authority the election will confer." Doc. 28 at 9. She alleges that she suffers "a present burden on [her] political association and campaign" because "[s]he must campaign for votes based on an office whose authority and governing structure are scheduled to change after voting ends." *Id.* at 10. However, irrespective of how McNeil or voters feel about the number of Commissioners on the PSC or the creation of a Secretary of Energy, nothing in Ala. Act No. 2026-345 prevents McNeil from continuing to pursue Place 2 or interferes with anyone's ability to vote for her. The challenged Act does not "burden[] voting or associational rights." *Jacobson*, 974 F.3d at 1262.

McNeil's arguments about the structure of the PSC concern a change in "governance," not voting, *cf. Presley v. Etowah Cnty. Comm'n*, 502 U.S. 491, 510

(1992). Indeed, McNeil emphasizes that the *Purcell* Principle[1] does not stand in the way of this Court granting injunctive relief when the election is already on-going[2] because "[t]he requested injunction … leaves the election machinery and the rules governing the casting and counting of votes untouched," doc. 28 at 16. The Governor agrees that *Purcell* does not apply here because the Court is not being asked to change anything about the ongoing election. Instead, McNeil is asking to delay the restructuring of a State agency because she alleges it impacts the campaign she is running. *Purcell* does not apply, and neither does the *Anderson – Burdick* analysis.

* * *

McNeil has not stated an Equal Protection claim, and so she is not likely to prevail. Even assuming *arguendo* that *Anderson – Burdick* applies, a very deferential review would be appropriate, given the lack of burden on the First and Fourteenth Amendment rights of McNeil and her supporters. The law easily passes. A party nominee is "not insulate[d] from the effects" of legislative change to an office created by the Legislature. *King v. Campbell*, 988 So. 2d 969, 980 (Ala. 2007). And even McNeil recognizes that the changes can be made after the election,[3] which

---

1 *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (*per curiam*) ("Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an election draws closer, that risk will increase.").

2 Absentee voting started in September. Ala. Code §§ 17-11-5, 17-11-12.

3 Doc. 21 at 22 ¶ 36 ("The State could achieve any legitimate regulatory reform goals by implementing changes after the conclusion of the election cycle already underway."); doc. 28 at

is when they occur.[4] The Legislature has determined that it is in the interest of the State to restructure the PSC, and McNeil has not demonstrated that judgment is wrong or inadequate. So, even if *Anderson – Burdick* applies (which it does not), McNeil is not likely to prevail on the merits of her Equal Protection claim.

**B. The equities do not support an injunction and McNeil's campaign-based claims will soon be moot.** The election is November 3, which is less than two weeks way. That is critically important. While McNeil desires relief targeting January 2027—when Burgess, Johnson, Joiner, and Ross will take office as PSC Commissioners and when the Secretary of Energy is expected to be appointed and assume office, doc. 23-1 at 4 *ll.* 70-71, 7 *ll.* 158-61—the burdens McNeil alleges she is suffering are wrapped up in the on-going election, doc. 28 at 9-11. Those burdens, if they exist, will end when McNeil's campaign does. That means McNeil inexcusably delayed in moving for preliminary injunctive relief, and her campaign-based claims will soon be moot. Her motion is also not in the public interest.

---

10 ("The requested injunction is tailored to that claim. It does not permanently prevent Alabama from restructuring the PSC. It maintains the existing structure only until the Court determines whether applying the Act's structural provisions to an election cycle already underway comports with the Constitution.").

[4] Doc. 23-1 at 4 *ll.* 69-72 (four appointed Commissioners "serve initial terms beginning January 18, 2027"); *id.* at 5 *ll.* 87-90 (Commissioners "shall be elected" in 2026 "in the same manner as" "before June 1, 2026"); *id.* at 6 *ll.* 134-37 (beginning in 2028, the Commissioners will choose a President and Vice-President from among themselves); *id.* at 7 *ll.* 158-61 (Secretary of Energy position created January 2027). It is true that Commissioners elected in November 2026 are elected to six-year terms, *id.* at 5 *ll.* 108-11, instead of four-year terms, *id.* at 3 *ll.* 38-44, but those longer terms start in January 2027, *id.* at *ll.* 108-11.

"A delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016). "Indeed, the very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Id.* Thus, McNeil's delay in moving undermines her assertions of harm, particularly where she has sworn that the alleged harms were ongoing months ago, doc. 28-1 at 7-11, and there is now vanishing little time in which she could experience relief.[5] If McNeil was really suffering irreparable harm to her campaign months ago, she should have moved for preliminary relief months ago.

McNeil argues that she did not delay because she was clear in her complaints that preliminary relief would be needed. Doc. 28 at 11-13. That argument is frivolous. This Court's Initial Order provides that "Any request for a temporary restraining order or preliminary injunction (*see* Fed. R. Civ. P. 65) must be presented in the form of a separate motion, even where the complaint requests such relief." Doc. 6 at 11. That requirement is not novel, or even unusual in this District, and this Court specifically brought it to McNeil's attention back in May, doc. 7. Moreover,

[5] The issue is exacerbated because both the Amended Complaint and McNeil's declaration specifically argued there was a need for injunctive relief "through the November 2026 election." Doc. 21 at 29 ¶ 61(c); doc. 28-1 at 10 ¶ 31. Now, though, McNeil argues for indefinite delay in restructuring a government agency *after* the election. *See e.g.*, doc. 28 at 2.

*VoteAmerica v. Raffensperger*, 609 F.Supp.3d 1341, 1368-69 (N.D. Ga. 2022), on which McNeil relies, doc. 28 at 13, is neither binding nor persuasive. The Georgia court simply recognized that plaintiffs *argued* "the timing of their [m]otion makes sense within the procedural posture of the case," *VoteAmerica*, 609 F.Supp.3d at 1368, before ultimately concluding "that the balance of the equities and the public interest weigh against entering a preliminary injunction in this case," *id.* at 1369.[6] McNeil could not expect to receive relief she had not moved for, and every day she declined to file a motion was a day she delayed.

At this point, any harm to McNeil is on the verge of resolving itself. Her motion is focused on alleged burdens on her campaign, doc. 28 at 9-11, and, win or lose, her campaign ends with on November 3. At that point, her claims about burdens on her campaign will be moot. "'A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.'" *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1335-36 (11th Cir. 2001) (*per curiam*) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)) (alteration adopted). "[M]ootness derives directly from the case-or-controversy limitation because 'an action that is

---

[6] As a side note, the Georgia court said "cases discussing undue delay in connection with the *Purcell* doctrine usually refer to the timing of the complaint." *VoteAmerica*, 609 F.Supp.3d at 1369. That does not make sense as a matter of first principles, and the doctrine has plainly proven not to be so limited. In June, citing one of *Purcell*'s progeny, the Supreme Court vacated the third injunction in five-year-old cases in part because "the District Court interposed itself into Alabama's ongoing efforts to conduct its imminent 2026 congressional elections." *Allen v. Milligan*, 608 U.S. 511, 515 (2026) (*per curiam*).

moot cannot be characterized as an actual case or controversy.'" *Id.* at 1335 (quoting *Adler v. Duval County Sch. Bd.*, 112 F.3d 1475, 1477 (11th Cir. 1997)). "Any decision on the merits of a moot case or issue would be an impermissible advisory opinion." *Id.* at 1336 (internal quotation marks and citations omitted).

Once the election is over, this Court cannot ease any burdens McNeil alleges she suffered during her campaign. An injunction preventing the Commissioners and Secretary of Energy from taking office won't do it. Indeed, all that would do is undermine the Legislature's judgment about how a State agency is best run, and McNeil has not carried her burden to demonstrate an entitlement to that extraordinary relief. Even if the Court were to rule before the General Election, McNeil's allegations of harm are supported only by her own conclusory and self-serving statements, which do not demonstrate harm to the public interest,[7] particularly when weighed against the Legislature's judgment.

"Although there is an exception to the mootness doctrine when the action being challenged by the lawsuit is capable of being repeated and evading review,

---

[7] *See e.g.*, doc. 28-1 at 4 ¶ 10 ("All of my campaign investments – financial, organizational, and reputational were made in direct reliance on the law as it existed when I entered the race. They cannot be undone or re-deployed without substantial and irreversible cost."); *id.* at 7 ¶ 20 ("My candidacy was organized, funded, and conducted on the basis of a statewide race, not a district-based one."); *id.* at 8-9 ¶ 24 ("Voters who heard my announcement, attended events, donated to my campaign, and committed to supporting my candidacy for a statewide at-large PSC seat now face a fundamentally different electoral landscape. The disruption to voter understanding and engagement is significant and will continue to worsen as implementation deadlines approach.").

this exception is narrow, and applies only in exceptional situations. *Al Najjar*, 273 F.3d at 1336 (internal quotation marks and citations omitted). While election cases frequently fall within the exception, *see e.g., Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974), they do not always, *see e.g., Hall v. Sec'y, Ala.*, 902 F.3d 1294 (11th Cir. 2018), and McNeil's challenge is not to an election rule but to the structure of a State agency. McNeil will not be able to demonstrate the exception applies.

**C. McNeil has not identified an appropriate injunction against the Governor to prevent the appointed Commissioners from taking office.** McNeil sued Governor Ivey, in part, to prevent her from appointing four new Commissioners who will take office in January 2027. *See e.g.*, doc. 21 at 30; *see also* doc. 23-1 at 4 *ll.* 69-84. After the Governor made those appointments, she argued McNeil's claims to prevent the appointments were moot. Doc. 24 at 20-21; doc. 27 at 6, 8; *see also* docs. 23-3 thru 23-7. Now, McNeil wants to enjoin the Governor "together with her officers, agents, servants, employees, and persons acting in active concert or participation with her, from taking further action to implement the structural provisions of Alabama Act No. 2026-345[.]" Doc. 28 at 2.

McNeil says that means that she wants the Governor (and others) enjoined from "[g]iving effect" to the appointments and from "[d]irecting or authorizing [the] appointees to assume office before final judgment …." *Id.; see also id.* at 19, but the appointments are made and McNeil has not demonstrated what further action there

is for the Governor to take that should be enjoined. Likewise, McNeil argues "the injunction should run against the Governor only to the extent of her prospective implementation authority," *id.* at 18 (capitalization normalized and emphasis omitted), but does not demonstrate that there remains something for the Court to enjoin the Governor to do, or not do, *see id.* at 18-19. McNeil wants the Governor enjoined from "[o]therwise implementing the Act's transition from the existing three-member PSC to the new seven-member structure before final judgment," *id.* at 2; *see also id.* at 20, but the new Commission seats will come into existence in January, even if they are vacant. All McNeil's abstract statements cannot paper over the fact that she has not identified further action that the Governor still needs to take as a condition precedent to the Commissioners assuming office.

If McNeil *actually* wants the Commissioners enjoined, that is a problem because they are not parties and have not been heard. *See* Fed. R. Civ. P. 19(a) (concerning joinder of persons who "claim[] an interest relating to the subject of that action" and are "so situated that disposing of the action in" their "absence may … as a practical matter impair or impede" their "ability to protect the interest").

Invoking Fed. R. Civ. P. 65 does not bridge that gap. By its plain language, that Rule is about binding additional persons or entities through an injunction issued against a defendant, not about issuing different injunctions to non-parties. Fed. R.

Civ. P. 65(d)(2) (describing persons bound by an injunction directed to the parties).[8]

All of this reveals a redressability problem. McNeil has not demonstrated that there is an injunction to enter against the Governor to prevent the Commissioners from taking office. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (internal quotation marks and citations omitted); *see also Davis v. FEC*, 554 U.S. 724, 734 (2008) ("Standing is not dispensed in gross. Rather, a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought.") (cleaned up).

**D. The Court should not certify any questions to the Supreme Court of Alabama.** McNeil asks the Court to certify questions about whether the winner of the PSC Place 2 election will serve a statewide or districted constituency and, if the latter, which district. Doc. 28 at 4. This Court should decline.

A certified question is not a way of avoiding the Eleventh Amendment's bar on federal courts "instruct[ing] state officials on how conform their conduct to state law." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984); *see also Doe v. Bush*, 261 F.3d 1037, 1055 (11th Cir. 2001). That bar is jurisdictional,

8 *Cf. Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 14 (1945) (The Rule "is derived from the commonlaw doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control. In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding.").

*McClendon v. Georgia Dep't. of Cmty. Health*, 261 F.3d 1252, 1256 (11th Cir. 2001), and it has not been waived, Ala. Const. art. I, § 14; *Ala. v. Pugh*, 438 U.S. 781, 782 (1978) (*per curiam*). Nor is a certified question an alternative method of seeking a State court declaratory judgment without starting in the State circuit court. Instead, a certified question is appropriate to answer "questions or propositions" of State law "which are determinative" of federal proceedings. Ala. R. App. P. 18(a).

McNeil is not clear which of her claims depend on the answers she seeks.[9] To the extent that McNeil thinks these are open questions hanging over her campaign, that campaign ends November 3 and so the questions are about to become moot. Moreover, McNeil first sought this relief on October 9, doc. 28 at 4, allowing insufficient time to secure answers and resolve her unidentified federal claim before the election.

To the extent that McNeil wants answers in case she wins the election, that is currently speculative. This Court can take judicial notice that the Alabama Republican Party is competing for the Place 2 seat,[10] and has certified Jim "Zig"

---

[9] *See* doc. 28 at 4 (referring to her opposition briefing); doc. 25 at 3-4 (discussing the questions without explaining "the portions of her complaint that hinge on" it); *but see* doc. 25 at 7 (indicating the questions are pertinent to at least her Due Process claims, which are not the subject of the PI motion).

[10] Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

Zeigler as its PSC Place 2 candidate, *see* doc. 23-2 at 1. McNeil is not guaranteed to win. That makes standing and ripeness—"[t]wo related doctrines of justiciability—each originating in the case-or-controversy requirement of Article III," *Trump v. New York*, 592 U.S. 125, 131 (2020) (*per curiam*)—dispositive. "First, a plaintiff must demonstrate standing, including an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical. Second, the case must be ripe—not dependent on contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (internal quotation marks and citations omitted); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (standing: "[W]e have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient.") (cleaned up). McNeil cannot currently overcome these jurisdictional bars when the Election Day remains in the future and the results unknown.

Even if McNeil does win, this Court should determine that it requires answers to her State law questions in order to resolve federal claims before it certifies those questions. Given the slapdash way in which McNeil made the request, if she wins, briefing on that issue may assist the Court in making a determination.

## IV. Conclusion

For the foregoing reasons, this Court should deny McNeil's motion.

Respectfully submitted,

Steve Marshall
*Attorney General*

s/Misty S. Fairbanks Messick
James W. Davis (ASB-4063-I58J)
*Deputy Attorney General*
Richard D. Mink (ASB-4802-M76R)
Misty S. Fairbanks Messick (ASB-1813-T71F)
Stephen J. Thornton (ASB-2064-S77X)
*Assistant Attorneys General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Facsimile: (334) 353-8400
Jim.Davis@AlabamaAG.gov
Richard.Mink@AlabamaAG.gov
Misty.Messick@AlabamaAG.gov
Stephen.Thornton@AlabamaAG.gov

*Counsel for Governor Ivey*